# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNDERGROUND SOLUTIONS, INC., | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 13 C 8407 |
| EUGENE PALERMO, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Underground Solutions, Inc. (UGSI) has sued Eugene Palermo, asserting claims of trade libel, intentional interference with prospective economic advantage, violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/2(a)(7) & (8), and the Lanham Act, 15 U.S.C. § 1125(a), and tortious interference with contract. UGSI bases its claims on Palermo's alleged distribution and presentation of information that it alleges contained defamatory information about UGSI's products. UGSI alleges that Palermo presented this information at conferences and published it on his website. Palermo has moved to dismiss UGSI's complaint. He has also filed a motion to strike, arguing that California's statute against strategic lawsuits against public participation (SLAPP) governs this dispute and warrants striking UGSI's state law claims. For the reasons stated below, the Court denies Palermo's motion to strike.

## Background

The Court has taken the following facts largely from UGSI's complaint. UGSI is a

Delaware corporation principally based in California. The company is a developer and seller of fusible polyvinyl chloride (PVC) pipe and is "the sole supplier of thermally butt-fused PVC pipe in the United States." Compl. ¶ 15. The pipe "creat[es] a monolithic, leak-free pipe system capable of being pulled in long lengths (e.g., through an existing host pipe or into a new directionally drilled hole) and also capable of withstanding the pressures utilized in water and certain wastewater applications." Id. ¶ 1. The competing product to UGSI's PVC pipe is high-density polyethylene (HDPE) pipe. UGSI alleges that its PVC pipe "has created a competitive alternative to HDPE pipe." Id. ¶ 3.

UGSI alleges that Palermo is a paid spokesman for Performance Pipe, an HDPE pipe manufacturer. Id. ¶ 22. It also alleges that Palermo is a Tennessee resident. Id. ¶ 17. UGSI contends that Palermo "intentionally disseminated, verbally and in writing, false and misleading information about the quality, characteristics, and reliability of Fusible PVC™ pipe and thermally butt-fused PVC joints." Id. ¶ 9. Specifically, UGSI alleges that Palermo provided this false information in presentations to industry participants at various conferences and also through his website starting in 2010. Id. ¶¶ 23–24.[1] UGSI says that Palermo "gives false impressions" that this information is objective, scientific evidence and that he is a neutral commentator rather than a paid spokesman. Id. ¶ 23. UGSI also contends that Palermo contacted UGSI's customers, including two in Illinois, to inform them that UGSI's pipe and joints caused pipeline incidents the customers experienced. Id. ¶¶ 34–37. This conduct, UGSI alleges, caused UGSI to lose business and harm the reputation of UGSI and its products. UGSI

---

[1] UGSI alleges that the conferences in question took place in Florida, Minnesota, and Michigan. Compl. ¶ 25. It also says Palermo presented the information to the American Water Works Association and the Canadian Standards Association. Id. ¶ 29.

2

further contends that Palermo told UGSI he would cease providing negative information about UGSI products, then failed to do so.

## Discussion

If a district court is sitting in diversity, it "must apply the choice of law principles of the forum state . . . to determine which state's substantive law governs the proceeding." *West Bend Mut. Ins. Co. v. Arbor Homes LLC*, 703 F.3d 1092, 1095 (7th Cir. 2013). Here, the parties agree that Illinois's choice of law rules apply to this dispute. In Illinois, "the rights and liabilities as to a particular issue are to be governed by the jurisdiction which retains the 'most significant relationship' to the occurrence and the parties." *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 61, 879 N.E.2d 910, 919 (2007). In adopting this rule, Illinois has "jettisoned the *lex loci delicti* rule—also termed the place-of-the-injury rule." *Id.*

The parties also agree that Illinois follows the doctrine of dépeçage, which "'refers to the process of cutting up a case into individual issues, each subject to a separate choice-of-law analysis.'" *Chi v. Loyola Univ. Med. Ctr.*, 787 F. Supp. 2d 797, 801 (N.D. Ill. 2011) (quoting *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 169–70, 879 N.E.2d 893, 906–07 (2007)). This concept applies when "it is appropriate to apply the law of more than one jurisdiction," such as when "the issues to which the different laws are applied are separable." *Spinozzi v. ITT Sheraton Corp.*, 174 F.3d 842, 848 (7th Cir. 1999). In the specific case of an anti-SLAPP statute cited as a defense to a defamation claim, the choice-of-law question regarding the anti-SLAPP law is treated separately from "whether a statement is defamatory." *Chi*, 797 F. Supp. 2d at 803. This is because the anti-SLAPP question involves whether a statement is

3

privileged, not whether its content is defamatory. *Id.*; *see also Global Relief Found. v. New York Times Co.*, No. 01 C 8821, 2002 WL 31045394, at *10 (N.D. Ill. Sept. 11, 2002).

Palermo argues that the Court should apply California's anti-SLAPP statute to UGSI's state law claims. *See* Cal. Civ. Proc. Code § 425.16. Palermo contends that California's law should apply because UGSI is domiciled in California and because Palermo's slideshow partly concerns "two catastrophic pipe failures occurring in California." Def.'s Mem. at 5–6. In his reply, Palermo expands upon this argument to contend that "(i) no speech originated in Tennessee; (ii) the speech touched on matters of public concern for many states, including California, but not Tennessee; (iii) a California citizen filed this lawsuit; (iv) any injury would have been experienced in California; and (v) the parties have litigated some of the matters in the courts of the State of California." Def.'s Repl. at 5. All told, Palermo says, "California has the strongest connection to the conduct that anti-SLAPP statutes protect." *Id.* at 2. He also bases his argument on the fact that his home state of Tennessee does not have a strong interest in having its law applied, because no allegedly offending speech originated there but instead occurred in multiple other states. If California's anti-SLAPP statute applies, Palermo argues, the Court must strike UGSI's state law claims, because Palermo's speech qualifies for protection under the statute and because UGSI cannot show that it will prevail on the merits of these claims.

UGSI responds that Palermo is a resident of Tennessee and that his speech did take place in Tennessee, both of which mean that Tennessee law should govern the dispute. UGSI cites this Court's decision in *Chi*, 787 F. Supp. 2d at 803. UGSI argues

4

that Tennessee's anti-SLAPP law "applies only to any communication of a public or governmental nature, made to an agency of the federal, state or local government." Pl.'s Mem. at 9. UGSI contends that because Palermo did not make any of his statements to government entities, Tennessee's anti-SLAPP law does not require the Court to strike its claims.

**A.** *Chi v. Loyola Univ. Med. Ctr.*

In *Chi*, the plaintiff alleged that he had worked in an Illinois hospital, then moved to Arizona, after which a doctor from the Illinois hospital completed forms about the plaintiff's performance there. *See Chi v. Loyola Univ. Med. Ctr.*, No. 10 C 6292, 2011 WL 687334, at *1 (N.D. Ill. Feb. 16, 2011). In completing the forms, the Illinois doctor stated he could not recommend hiring the plaintiff. *Id.* The plaintiff then brought several claims against the Illinois hospital, including defamation. After the plaintiff filed his third amended complaint, the defendant moved to dismiss the complaint, citing Illinois's anti-SLAPP law.

The Court determined that Arizona law governed the defamation claim at issue but also ruled that it needed to examine separately the question of whether Arizona's or Illinois's anti-SLAPP law applied. The separate analysis was warranted because this was a question of whether the statement was privileged rather than whether it was defamatory. The Court observed that "[t]he purpose behind an anti-SLAPP law is to encourage the exercise of free speech." *Chi*, 787 F. Supp. 2d at 803. This fact counseled that "the place where the allegedly tortious speech took place and the domicile of the speaker are central to the choice-of-law analysis on this issue." *Id.* Further, "[a] state has a strong interest in having its own anti-SLAPP law applied to the

speech of its own citizens, at least when, as in this case, the speech initiated within the state's borders." *Id.*

Defendants in *Chi* were Illinois citizens, and plaintiff alleged that their defamatory speech originated in Illinois, although plaintiff himself lived in Arizona and suffered the injury there. The Court concluded that "Illinois thus has a strong interest in having its own anti-SLAPP statute applied to the issue of whether defendants are immune from liability for defamation." *Id.* In the few years following *Chi*, other courts in this district have cited the decision with approval. *See Intercon Solutions, Inc. v. Basel Action Network*, 969 F. Supp. 2d 1026, 1035 (N.D. Ill. 2013); *Duffy v. Godfread*, No. 13 C 1569, 2013 WL 4401390, at *4 (N.D. Ill. Aug. 14, 2013); *Doctor's Data, Inc. v. Barrett*, No. 10 C 3795, 2011 WL 5903508, at *3 (N.D. Ill. Nov. 22, 2011).

**B.     Selection of anti-SLAPP statute**

As in *Chi*, and as the parties agree, the two anti-SLAPP statutes at issue (California's and Tennessee's) differ. Therefore "the Court must determine which state's statute applies." *Chi*, 787 F. Supp. 2d at 803. The parties do not dispute the Court's conclusion in *Chi* that a speaker's location is a critical factor in determining choice of law in a case involving the urged application of an anti-SLAPP statute. In fact, Palermo cites *Chi* with approval, recognizing that "the analysis begins with the interest of Dr. Palermo's home state—Tennessee." Def.'s Mem. at 5. However, he goes on to argue that his speech originated not in Tennessee but in multiple other states. Palermo concludes that California law should apply given UGSI's domicile there among other facts.

Palermo bases his argument on his own framing of what UGSI is alleging against

6

him, despite UGSI's arguments to the contrary. He contends that his statements were made in states other than Tennessee, arguing that "UGSI does not allege *any* libelous statements originating out of Tennessee." Def.'s Mem. at 19. He continues: "UGSI never alleges that Dr. Palermo posted such information to his website while in Tennessee, that the information on his website is stored on servers in Tennessee, or even that the information on the website was ever accessed in Tennessee." Def.'s Repl. at 4. Therefore, Palermo argues, Tennessee's anti-SLAPP law should not apply, "because no conduct occurred in the state of Dr. Palermo's domicile." *Id.*

UGSI disagrees and says that it in fact contends that at Palermo's offending speech, or at least a good deal of it, originated in Tennessee. UGSI's complaint and brief in response to Palermo's motion do not provide specifics about Palermo's web posting locations or servers. But UGSI's complaint is fairly construed to allege that at least some of Palermo's alleged defamatory activities occurred in Tennessee. Tennessee is mentioned in this paragraph in the complaint:

> Palermo is, and at all times mentioned herein was, a resident of Tennessee. Palermo is engaged in a propaganda campaign, at the behest and with the knowledge and approval of Performance Pipe, to intentionally misstate the quality and characteristics of Fusible PVC™ pipe and thermally butt-fused PVC joints, as outlined below.

Compl. ¶ 17. The complaint proceeds to allege various untruths that Palermo made in a slideshow "which Palermo has presented at various industry conferences and makes available to third parties on his website." *Id.* ¶ 24. One can reasonably take from this that UGSI is alleging that Palermo has defamed UGSI from Tennessee, his state of residence, via his website, and also elsewhere, at "various industry conferences." The mention of his Tennessee domicile in this context otherwise makes no sense. UGSI

7

expands on this point in its response memorandum, arguing that it "clearly does allege in the complaint that Palermo posted the slideshow and other defamatory statements on his website," noting that Palermo lists a Tennessee address on his site. Pl.'s Resp. at 7. The Court notes that Palermo offers nothing indicating how he contends the allegedly defamatory speech ended up on his website. He does not argue, for example, that someone else posted the information—the slideshow in question has his name on the title slide—or that he was outside of Tennessee when he posted the slideshow.

In addition, Palermo concedes he is a Tennessee resident. This Court said in *Chi* that "the place where the allegedly tortious speech took place and the domicile of the speaker are central to the choice-of-law analysis" in deciding which state's anti-SLAPP law to apply. 787 F. Supp. 2d at 803. The Court went on to observe that "[a] state has a strong interest in having its own anti-SLAPP law applied to the speech of its own citizens, at least when, as in this case, the speech initiated within the state's borders." *Id.* Palermo focuses on the "at least when" part of this sentence. He appears to assume that the Court meant a state's anti-SLAPP statute governs *only* in situations where a citizen of the state also performs a speech act within its borders. *See* Def.'s Mem. at 5. But the Court did not intend the "at least when" clause of that sentence as a limitation on the rule. Rather, the Court was simply marking a clear-cut example of behavior warranting application of the domicile state's anti-SLAPP law. This case is another such example. Palermo lives in Tennessee, and he is alleged to have given defamatory presentations in multiple other states. His connection to Tennessee is clearest, and as described below, Tennessee has the clearest interest in applying its anti-SLAPP law vis-à-vis one of its own citizens.

Palermo also contends that the law of the victim's domicile should apply when the defamatory speech occurred in several states. The problem with this argument is that the cases he cites to support it are not anti-SLAPP statute cases. It is true that, in the Seventh Circuit, "[w]hen the defamatory statement is communicated in many different states, it makes sense to apply the law of the plaintiff's domicile." *Kamelgard v. Macura*, 585 F.3d 334, 341 (7th Cir. 2009); *see also Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 916 (7th Cir. 1994) ("the Illinois cases say that in a multistate defamation case . . . the applicable law is that of the victim's domicile, period."). But as these quotations indicate, this rule concerns a defamation claim, not the specific scenario where a defendant in a defamation case asks a court to strike the claim because of an anti-SLAPP law. This Court addressed the difference in *Chi*, recognizing that "[t]he fact that Arizona law governs Dr. Chi's defamation claim is not dispositive of" which state's anti-SLAPP law applies. 787 F. Supp. 2d at 803. This notion is dictated by the doctrine of dépeçage, which as noted above permits courts to separate individual issues within a case and subject each to a separate choice-of-law analysis. Because the anti-SLAPP question involves an issue of privilege and is thus treated separately from the question of whether a statement is defamatory, the cases Palermo cites do not control this question.

In his reply, Palermo asserts that the four-factor "most significant contacts" test from Illinois supports his conclusion that applying California's anti-SLAPP law is in harmony with this Court's decision in *Chi*. He points to the third factor in Illinois's test, the domicile of the parties. He notes that although his domicile is in Tennessee, he was "speaking as an agent of a Texas company (*i.e.*, Performance Pipe)," and he states that

9

"none of the alleged conduct occurred in Tennessee." Def.'s Repl. at 4–5. The fact that Palermo lives in Tennessee is an "isolated fact," he says, and "[t]his Court's ruling in *Chi* is consistent with this factor favoring California because UGSI's domicile coincides with a state where at least some conduct occurred." *Id.* This gets *Chi* exactly backward. As noted above, *Chi* stressed the importance of a speaker's domicile in a court's decision on which state's anti-SLAPP law to apply and stated that "place of injury . . . is less important" in "the anti-SLAPP context." *Chi*, 787 F. Supp. 2d at 803. A speaker's residence, on the other hand, is not an "isolated fact" but one of the "central" factors to be considered. *Id.* This is because of a state's acute interest in protecting the speech of its own citizens, which counsels in favor of applying the anti-SLAPP statute of a speaker's domicile to his statements. The facts Palermo presents in trying to connect this case to California—that UGSI is located there, that his slideshow describes pipeline incidents there, and that the parties have previously litigated matters there—are not sufficient to outweigh this strong interest.

Considering the analysis above—including the fact that Palermo's domicile is in Tennessee and that UGSI alleges that he posted defamatory material on his website from there—the Court agrees with UGSI that Tennessee's anti-SLAPP statute applies to this case, rather than California's.

**C.     Operation of anti-SLAPP statute**

Tennessee's anti-SLAPP statute provides as follows:

> Any person who in furtherance of such person's right of free speech or petition under the Tennessee or United States Constitution in connection with a public or governmental issue communicates information regarding another person or entity to any agency of the federal, state or local government regarding a matter of concern to that agency shall be immune from civil liability on claims based upon the communication to the agency.

10

Tenn. Code. Ann.§ 4-21-1003(a). California's statute includes no such limitation of the speech in question to statements made to government officials. It applies to "any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." Cal. Civ. Proc. Code § 425.16(b)(1).

UGSI contends that its "complaint does not allege a single instance where Palermo made a defamatory statement to a governmental agency." Pl.'s Resp. at 9. It argues that the complaint specifically discusses industry conferences where Palermo made his presentations, and that contractors and engineers used the slideshows from his website. Therefore, UGSI concludes, the application of Tennessee's anti-SLAPP statute does not protect Palermo's statements. Although Palermo does not discuss Tennessee's statute in his initial memorandum, he does address it in a footnote in his reply. There, he states that he "directed the speech at issue to agencies of local government regarding matters of concern to those agencies." Pl.'s Repl. at 2 n.1. "In this connection," he continues, "Dr. Palermo may seek leave to introduce evidence that, among the people to whom his presentations were directed, included municipal decision-makers." *Id.*

Palermo has forfeited this point. "[A]rguments raised for the first time in a reply brief are waived." *Darif v. Holder*, 739 F.3d 329, 336 (7th Cir. 2014). Furthermore, "raising an issue in general terms is not sufficient to preserve specific arguments that were not previously presented." *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012). Palermo did not present any argument that his conduct is protected under Tennessee's anti-SLAPP law until he filed his reply. He cannot maintain that this was

his only opportunity to do so; he was plainly aware when he filed his initial brief that there was the potential for Tennessee's law to apply. Indeed, one of his first arguments under his "Choice of Law" heading was that Tennessee had no interest in the dispute because Palermo did not make any statements there. *See* Def.'s Mem. at 5 ("Here, the analysis begins with the interest of Dr. Palermo's home state—Tennessee . . . .").[2]

Even if Palermo had not forfeited the argument, UGSI does not allege that Palermo made the defamatory statements to government officials. There is an allegation in the complaint that Palermo gave the information to two consulting firms, which in turn recommend pipe materials to "municipal . . . customers." *See* Compl. ¶ 34. But that is not the same thing as Palermo communicating the information to the municipalities himself, and he does not cite any authority that supports concluding otherwise. UGSI argues, and Palermo does not answer, that Tennessee courts narrowly construe this requirement, citing a district court case where statements made to the media were not protected. *See Jimenez v. Vanderbilt Landscaping, LLC*, No. 3-11-0276, 2011 WL 3027190, at *2 (M.D. Tenn. July 25, 2011). There is no reason to believe that the result should be different here. In addition, Palermo's statement in his reply that he now wants to introduce evidence that municipal decision makers were in some of his audiences—assuming such would carry the day, a question the Court need not address—does not entitle him to relief; the time to offer that evidence was during

---

[2] As UGSI points out, Palermo did in his initial memorandum reference his "lectures to municipalities." See Def.'s Mem. at 1. But he used that phrase only in the context of UGSI's complaint, which actually contains no such reference. "Rather," UGSI argues, "they were speeches made at industry trade conferences and petitions before nongovernmental standards setting organizations." Pl.'s Resp. at 9 n.3. Further, this reference to municipalities was not made in the context of Tennessee's anti-SLAPP law, so it does not assist Palermo in arguing his references to the law are new in the reply and thus forfeited.

12

briefing of the current motion.

In sum, there is no basis in the record to infer that Palermo's statements at industry conferences and on a website were made to public officials in a way that would render him immune from liability under the Tennessee anti-SLAPP statute. The Court concludes that the statute does not warrant striking UGSI's claims.

## Conclusion

For the reasons stated above, the Court denies Palermo's motion to strike [docket no. 18]. UGSI is directed to file a response to Palermo's motion to dismiss [docket no. 15] by no later than June 5, 2014. Palermo is directed to file a reply by no later than June 19, 2014.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: May 15, 2014