**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNDERGROUND SOLUTIONS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **No. 13 C 8407** |
| | ) | |
| **EUGENE PALERMO,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Underground Solutions, Inc. (UGSI) has sued Eugene Palermo, asserting claims of trade libel, interference with prospective economic advantage, interference with contract, false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1), and violation of the Illinois Uniform Deceptive Trade Practices Act (IUDTPA), 815 ILCS 510/2(a)(7)–(8). Palermo has moved to dismiss UGSI's complaint for failure to state a claim.

For the reasons stated below, the Court grants Palermo's motion in part and denies the motion in part. The Court dismisses UGSI's intentional interference with prospective economic advantage (Count 2), tortious interference with contract (Count 5), and IUDTPA (Count 3) claims, with leave to amend. The Court denies Palermo's motion to dismiss as to UGSI's trade libel (Count 1) and Lanham Act (Count 4) claims.

**Background**

For purposes of the motion to dismiss, the Court accepts as true the following facts alleged in UGSI's complaint. UGSI is a Delaware corporation with its principal

place of business in California.  Compl. ¶ 14.  UGSI sells and develops fusible polyvinyl chloride (PVC) pipe, which is used "in water and wastewater pipeline applications, as well as for conduit for electrical and fiber optic applications."  *Id.* ¶ 1.  UGSI is "the sole supplier of thermally buttfused PVC pipe in the United States."  *Id.* ¶ 15.

Palermo is a Tennessee resident.  *Id.* ¶ 17.  UGSI alleges that Palermo was hired to act as a paid spokesperson for its competitor, Performance Pipe.  *Id.* ¶¶ 8–9, 22. Performance Pipe manufactures high-density polyethylene (HDPE) pipe, which "was the primary pipe material utilized in trenchless water and wastewater applications prior to the introduction of Fusible PVC™ pipe."  *Id.* ¶ 2, 17.

UGSI alleges that since October 2010, Palermo has presented false and misleading information at multiple industry conferences and has published false and misleading information on his website.  *Id.* ¶¶ 10, 23–24.  Those misrepresentations concern "the quality, characteristics, and reliability of Fusible PVC™ pipe and thermally butt-fused PVC joints."  *Id.* ¶ 9.  UGSI alleges that Palermo disseminated false information without disclosing his affiliation with Performance Pipe, which gave the false impression that his conclusions were "based on objective scientific evidence and valid third party investigation."  *Id.* ¶ 23.  Additionally, UGSI alleges that Palermo "contacted UGSI's customers following pipeline incidents involving Fusible PVC™ pipe and told the customers that the Fusible PVC™ pipe and/or thermally butt fused PVC joints caused the incident, despite Palermo's failure to conduct a thorough and complete investigation of the cause of such pipeline incidents."  *Id.* ¶ 11.

UGSI claims that it suffered damage as a result of Palermo's misrepresentations. Specifically, UGSI alleges that "existing and prospective customers have been deterred

from buying UGSI's products." *Id.* ¶ 46. UGSI also claims that its pipes were being considered for upcoming projects but that Palermo's statements dissuaded potential purchasers. *Id.* ¶¶ 52–53. UGSI alleges that its pipes were "excluded from consideration by at least two consulting engineering firms based in Illinois that design water and wastewater treatment projects and recommend pipe materials to municipal, commercial, and industrial customers." *Id.* ¶¶ 34–36. The complaint quotes e-mails UGSI received from two consulting engineers who expressed hesitation about using UGSI's pipes after reading Palermo's reports. *Id.* ¶¶ 35–36. UGSI also alleges that as a result of Palermo's misrepresentations, engineers and municipalities that "had previously specified Fusible PVC™ pipe as the only acceptable material for their projects changed the specifications to include an alternate product, such as HDPE." *Id.* ¶ 46.

Palermo has moved to dismiss UGSI's complaint in its entirety.

## Discussion

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court accepts the plaintiff's allegations as true and draws reasonable inferences in the plaintiff's favor. *Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010). To survive a motion to dismiss, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

3

**A.    Statute of limitations**

Palermo seeks dismissal on the ground that the statute of limitations expired on each of UGSI's claims before UGSI filed its lawsuit on November 21, 2013.  Palermo argues that UGSI's claims are time barred because all of the claims arose in October 2010, which is when UGSI alleges that Palermo began making false statements.  In response, UGSI contends that each presentation and publication after November 2010 can form the basis for liability.[1]  For the reasons set forth below, Palermo is not entitled to dismissal on this basis.

**1.    Applicable limitations periods**

As a threshold matter, the Court must determine which limitations periods apply to UGSI's claims.  A district court sitting in diversity must apply the choice of law principles from the forum state to determine which state's law governs.  *West Bend Mut. Ins. Co. v. Arbor Homes LLC*, 703 F.3d 1092, 1095 (7th Cir. 2013).  The Court must therefore apply Illinois choice of law rules to determine the governing statute of limitations.  In Illinois, statutes of limitation are procedural, and thus the Illinois statute of limitations applies to all claims unless the Illinois borrowing statute is triggered.  *See Newell Co. v. Petersen*, 325 Ill. App. 3d 661, 668–69, 758 N.E.2d 903, 908 (2001).

The parties do not dispute that a one-year limitations period applies to UGSI's trade libel claim under Illinois law.  *See* 735 ILCS 5/13-201 (one-year limitations period for libel); *Johnson Controls, Inc. v. Exide Corp.*, 152 F. Supp. 2d 1075, 1078 (N.D. Ill.

---

[1]  The complaint lists presentations during which a different sales manager at Performance Pipe presented Palermo's materials.  Compl. ¶ 27.  The parties have not briefed whether Palermo can be liable for those presentations, so the Court does not address that issue.

2001) (applying the libel limitations period to trade libel).[2]

The parties also agree that a three-year limitations period applies to UGSI's Lanham Act and IUDTPA claims. *See* 815 ILCS 505/10(a)(e); *Clever Ideas, Inc. v. Citicorp Diners Club, Inc.*, No. 02 C 5096, 2003 WL 21982141, at *13 (N.D. Ill. Aug. 20, 2003) (noting that the three-year statute of limitations from the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) has been applied to IUDTPA claims); *Johnson Controls, Inc.*, 152 F. Supp. 2d at 1079 (noting that courts have applied the ICFA limitations period to Lanham Act claims).

The parties disagree about which limitations period applies to the tortious interference claims. Palermo argues that California's two-year limitations period applies to UGSI's interference claims, whereas UGSI argues that Illinois' five-year period applies. For the reasons stated below, the Illinois borrowing statute is triggered with respect to UGSI's interference claims. Thus California's two-year limitations period applies.

The Illinois borrowing statute applies if (1) the cause of action arises in another state, (2) the other state's statute of limitations is shorter than the Illinois period, and (3) none of the parties reside in Illinois. 735 ILCS 5/13-210; *Emp'rs Ins. of Wausau v. Ehlco Liquidating Trust*, 309 Ill. App. 3d 730, 737, 723 N.E.2d 687, 693 (1999). The last two requirements are easily met. California's limitations period is shorter than Illinois' limitations period. *Compare* Cal. Civ. Proc. Code § 339(1) (two years); *Kolani v. Gluska*, 64 Cal. App. 4th 402, 408, 75 Cal. Rptr. 2d 257, 260 (1998) (applying § 339(1)

---

[2] California courts dispute whether the statute of limitations for trade libel is one or two years. *See Rebel, LLC v. Aqua Connect, Inc.*, No. CV 13-4539 RSWL MANX, 2014 WL 2890242, at *4 (C.D. Cal. June 24, 2014). The Court need not address this issue because there is no basis to borrow California's limitations period.

5

to intentional interference with prospective economic advantage claim); *DC Comics v. Pac. Pictures Corp.*, 938 F. Supp. 2d 941, 948 (C.D. Cal. 2013) (applying § 339(1) to tortious interference with contract claim), *with* 735 ILCS 5/13-205 (five-year limitations period for "all civil actions not otherwise provided for").  And none of the parties reside in Illinois.

Both parties agree that the Court must apply the approach described in the Restatement (Second) of Conflicts of Law to determine where the claim arose for purposes of the borrowing statute.  *See Ehlco*, 309 Ill. App. 3d at 739, 723 N.E.2d at 694; *Mitchell v. United Asbestos Corp.*, 100 Ill. App. 3d 485, 499, 426 N.E.2d 350, 360 (1981).  The parties disagree about the result of that analysis.  UGSI argues that the law of the place of the injury should apply because "the complaint specifically identifies two instances where the 'injury was felt in Illinois' –emails from two consulting engineering firms in Illinois who expressed concern with UGSI's Fusible PVC® pipe after reviewing Palermo's false statements."  Pl.'s Resp. to Def.'s Mot. to Dismiss at 4.  Palermo argues that California law should apply because UGSI's principal place of business is in California.

To determine which state has the most significant interest as required under the Second Restatement, the Court must apply a "'two-step process in which the court (1) chooses a presumptively applicable law under the appropriate jurisdiction-selecting rule, and (2) tests this choice against the principles of § 6 in light of relevant contacts identified by general provisions like § 145 (torts).'"  *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 164, 879 N.E.2d 893, 903 (2007) (quoting P. Borchers, *Courts and the Second Conflicts Restatement: Some Observations and an Empirical Note*, 56 Md. L.

Rev. 1232, 1247 (1997)).

Here, the applicable presumptive rule is section 151, which states that "[t]he choice-of-law rules involving injurious falsehood are the same as those involving defamation." Restatement (Second) of Conflicts of Law § 151. *See also Kelco Metals, Inc. v. Morgan*, No. 09 C 4476, 2010 WL 1427583, at *5 (N.D. Ill. Apr. 5, 2010) (applying section 151 to tortious interference claims involving injurious falsehood). For cases involving defamation or injurious falsehood disseminated in multiple states, there is a presumption in favor of applying the law of the plaintiff's domicile. *See Kamelgard v. Macura*, 585 F.3d 334, 341 (7th Cir. 2009); *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 916 (7th Cir. 1994) ("[T]he Illinois cases say that in a multistate defamation case . . . the applicable law is that of the victim's domicile, period.").

The Restatement contemplates instances where a state other than the state of the plaintiff's domicile might have the most significant relationship, including when "the matter claimed to be defamatory related to an activity of the plaintiff that is principally located in this state" or "the plaintiff suffered greater special damages in this state than in the state of its principal place of business." Restatement (Second) of Conflicts of Law § 150, cmt. f. UGSI does not claim that Palermo's alleged false statements involved activity principally located in Illinois; indeed, UGSI's business is nationwide, and Palermo's allegedly false statements were made in many states. Compl. ¶ 1. UGSI refers to two e-mails from Illinois consulting firms expressing concerns about Palermo's studies to show it suffered damage in Illinois, but it provides no indication that damages were greater in Illinois than in California. California law therefore presumptively applies.

The second step of the Second Restatement approach is to test the presumption

by balancing the factors of section 145 to determine which state has the most significant interest. Those factors include the place where the injury occurred, the place where the conduct causing the injury occurred, the parties' domicile, and the place where the relationship is centered. Restatement (Second) of Conflicts of Law § 145. UGSI alleges that Palermo made false statements in multiple states, but it points specifically to injury suffered in Illinois. The first factor therefore points slightly in favor of Illinois law. Palermo gave presentations in Florida, Minnesota, Michigan, and other states (though none in California or Illinois),[3] but he also allegedly contacted customers in Illinois about a pipeline incident. Because UGSI has alleged some conduct in Illinois, this factor also slightly favors Illinois. The domicile of the parties, however, cuts strongly in favor of California law, because UGSI's principal place of business is in California. California has a strong interest in protecting its businesses from injurious falsehood. Illinois, on the other hand, has a less significant interest in preventing injuries to out-of-state businesses. Based on the strong presumption in favor of applying the law of the plaintiff's domicile and California's interest in the application of its law, California's statute of limitations applies to the two interference claims. *See Townsend*, 227 Ill. 2d at 162, 879 N.E.2d at 902 (expressing concern that courts "have undervalued the specific presumptive rules").

Based on this analysis, California law also applies to UGSI's claims for trade libel and tortious interference.

---

[3] It does not appear that Palermo gave a presentation in Illinois. Rather, a Performance Pipe sales manager presented Palermo's reports at an Illinois conference in 2012. Compl. ¶ 27.

### 2. Accrual arguments

Palermo argues that UGSI's claims are time barred. But "a plaintiff is not required to negate an affirmative defense, such as the statute of limitations, in his complaint." *Clark v. City of Braidwood*, 318 F.3d 764, 767 (7th Cir. 2003); *see also Richards v. Mitcheff*, 696 F.3d 635, 637-38 (7th Cir. 2012). A court may dismiss a complaint under Rule 12(b)(6) based on the statute of limitations only "if the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (internal quotation marks omitted). The complaint does not set forth enough information to make such a determination in this case.

### a. Single publication rule

The single publication rule does not provide a basis to dismiss UGSI's claims for failure to state a claim. Under the single publication rule, the statute of limitations for libel or any tort related to a single publication, exhibition, or presentation begins to run when the material is first published. *See* Cal. Civ. Code § 3425.3; 740 ILCS 165/1; *Shively v. Bozanich*, 31 Cal. 4th 1230, 1245, 80 P.3d 676, 684 (2003). The Court also assumes for purposes of discussion that the same rule applies to Lanham Act claims. *See Yeager v. Bowlin*, 495 F. App'x 780, 781–82 (9th Cir. 2012). The single publication rule, however, only applies to copies of "any one presentation to an audience." Cal. Civ. Code § 3425.3; 740 ILCS 165/1. UGSI alleges that Palermo made multiple presentations and published "variations" of his slide show on his website. Compl. ¶ 24. Each new presentation to a different audience that took place within the statutory period therefore triggers liability for the particular publication. *See Blair v. Nev. Landing P'ship*,

369 Ill. App. 3d 318, 325, 859 N.E.2d 1188, 1194 (2006) (citing *Lehman v. Discovery Commc'ns, Inc.*, 332 F. Supp. 2d 534, 539 (E.D.N.Y. 2004)). Each new presentation was "intended to reach a new audience and is therefore an additional communication." *Lehman*, 332 F. Supp. 2d at 539 (stating that a television rebroadcast "has renewed impact with each viewing and creates a new opportunity for injury"). UGSI's claims are therefore not time barred as to Palermo's live presentations within the limitations periods.

Although the statute of limitations generally begins to run in this context when a website is first published, UGSI's complaint alleges that different versions of Palermo's slide show were posted on the Internet. Compl. ¶ 24. UGSI points out that the slide show copy attached to Palermo's motion to dismiss reports 2012 pipe failures, which indicates that at least one version was published during or after 2012. Accordingly, the Court does not have information that would permit a ruling on a motion to dismiss that the single publication rule applies to bar the reports and slide show copies posted to Palermo's website. *See Blair*, 369 Ill. App. 3d at 325, 859 N.E.2d at 1194 (stating in the context of a right to privacy claim that a "republication of the plaintiff's likeness can constitute a new cause of action if the publication is altered so as to reach a new audience or promote a different product"); *Yeager v. Bowlin*, 693 F.3d 1076, 1082 (9th Cir. 2012) ("[U]nder California law, a statement on a website is not republished unless the statement itself is substantively altered or added to, or the website is directed to a new audience.").

> b.    **Discovery rule**

UGSI invokes the discovery rule to argue that it can obtain relief for conduct that

took place outside the applicable limitations periods. *See* Cal. Civ. Proc. Code § 339(1) (action "shall not be deemed to have accrued until the discovery of the loss or damage suffered by the aggrieved party thereunder"); *Sam Kholi Enters., Inc. v. Jones Motor Grp., Inc.*, No. 11-CV-0177 W POR, 2012 WL 4497325, at *5 (S.D. Cal. Sept. 28, 2012) (applying discovery rule to interference claims). UGSI does not allege in its complaint when it discovered Palermo's alleged misrepresentations. Because UGSI's complaint is "silent as to the date of discovery," *Clark*, 318 F.3d at 767, the Court cannot determine on a motion to dismiss that the discovery rule is inapplicable.

### c. Special damages

UGSI argues that its claim for trade libel is not time barred because the action accrued only after it suffered special damages. Because the Illinois borrowing statute does not apply to UGSI's trade libel claim, Illinois accrual rules govern even though California's substantive law applies. *See Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 707 (7th Cir. 2004). The one court to address accrual for a trade libel claim under Illinois law applied the defamation accrual rule, which as a general rule is the time of publication. *See Johnson Controls*, 152 F. Supp. 2d at 1078. In that case, however, both parties agreed to treat defamation and trade libel the same for statute of limitations purposes. *Id.* at 1078 n.7.

Under Illinois law, "[a] tort cause of action accrues when all the elements of the suit . . . are present." *Ericksen v. Vill. of Willow Springs*, 279 Ill. App. 3d 210, 215, 660 N.E.2d 62, 66 (1995). *Accord Gerbasi v. PHH Home Loans, LLC*, No. B240288, 2013 WL 2448407, at *2 (Cal. Ct. App. June 6, 2013). Under California law, special damages are an element of trade libel. Thus "[a] cause of action for trade libel [ ] accrues when

the plaintiff suffers 'special damages in the form of pecuniary loss.'" *Consortium Info. Servs., Inc. v. Experian Info. Solutions, Inc.*, No. G043781, 2011 WL 1782114, at *5 (Cal. Ct. App. May 10, 2011) (unpublished) (quoting *Guess, Inc. v. Superior Court*, 176 Cal. App. 3d 473, 478, 222 Cal. Rptr. 79 (1986)). The complaint does not specify when UGSI first suffered such damages, so the Court cannot determine on a Rule 12(b)(6) motion that UGSI's trade libel claim accrued outside the limitations period.

### d. Continuing violation

As to UGSI's Lanham Act and IUDTPA claims, it appears that the majority of the presentations took place after the November 21, 2010 accrual date. Although neither party invoked the doctrine, the "notion of a continuing wrong" applies to Lanham Act claims in the Seventh Circuit. *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 821 (7th Cir. 1999) (internal quotation marks omitted). *See Hot Wax, Inc. v. Warsaw Chem. Co.*, 45 F. Supp. 2d 635, 647 (N.D. Ill. 1999) (continuing wrong principles apply to Lanham Act false advertising claims). The continuing violation doctrine allows a plaintiff to pursue relief for "a time-barred act by linking it with an act that is within the limitations period." *Selan v. Kiley*, 969 F.2d 560, 564–65 (7th Cir. 1992). For continuing violation principles to apply, the unlawful acts must be a "series, a continuum, rather than a concatenation of unrelated acts." *Moskowitz v. Trs. of Purdue Univ.*, 5 F.3d 279, 282 (7th Cir. 1993). The continuing violation doctrine will "delay the deadline for suing with respect to the earliest acts in the series only if their character was not apparent when they were committed but became so when viewed in the light of the later acts." *Id.* As with the discovery rule, the Court cannot determine on a motion to dismiss that the continuing violation doctrine does not apply. Thus the Court cannot appropriately

dismiss UGSI's Lanham Act or IUDTPA claim based on the statute of limitations.

For the reasons stated above, Palermo is not entitled to dismissal of UGSI's claims based on the statute of limitations.

## B.    Failure to state a claim

### 1.    Trade libel

#### a.    Special damages

Palermo contends that UGSI has insufficiently alleged special damages as required to state a claim for trade libel.  Federal Rule of Civil Procedure 9(g) provides that "[i]f an item of special damage is claimed, it must be specifically stated."

For the same reasons that California's statute of limitations applies to UGSI's interference claims, California's substantive law applies to UGSI's trade libel.  A claim for trade libel requires proof of special damages under California law.  A plaintiff must allege "specific pecuniary loss."  *Leonardini v. Shell Oil Co.*, 216 Cal. App. 3d 547, 572, 264 Cal. Rptr. 883, 898 (1989).  For a plaintiff to prevail in an action for trade libel, "it is not enough to show a general decline in his business resulting from the falsehood, even where no other cause for it is apparent."  *Erlich v. Etner*, 224 Cal. App. 2d 69, 73, 36 Cal. Rptr. 256, 259 (1964).  Rather, a plaintiff generally "must identify the particular purchasers who have refrained from dealing with him, and specify the transactions of which he claims to have been deprived."  *Id.* at 74, 36 Cal. Rptr. at 259 (internal quotation marks omitted).

On a motion to dismiss in federal court, however, the requirement to "specifically state" items of special damages does not present so high a hurdle.  "[I]t is enough to identify a concrete loss."  *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th

Cir. 2013), *cert. denied*, 134 S. Ct. 2829 (2014). In *Pippen*, the plaintiff alleged that "endorsement and personal-appearance opportunities dwindled as a result of the defendants' false reports" and "identified specific business opportunities that had been available to him earlier but that, following the defendants' statements, were available no more." *Id.* The court found this sufficient under Rule 9(g). *Id.* In addition, though the plaintiff must allege "some actual pecuniary loss," "an estimation of final total dollar amounts lost is unnecessary." *Action Repair, Inc. v. Am. Broad. Cos.*, 776 F.2d 143, 149–50 (7th Cir. 1985) (internal citation omitted). In *Fleck Bros. Co. v. Sullivan*, 385 F.2d 223 (7th Cir. 1967), the complaint's allegation that the plaintiff "expended time, money, and effort to reestablish its credit" was sufficient to "notify defendants of plaintiff's claim that it has suffered monetary loss" as a result of the defendant's libelous statements. *Id.* at 225.

UGSI alleges that because of Palermo's misrepresentations, "UGSI personnel were and are required to expend extensive time and effort to address customers' and prospective customers' questions about Fusible PVC™ pipe and assuage their concerns." Compl. ¶ 47. The complaint also quotes e-mails from consulting engineers expressing concern about Palermo's reports. *Id.* ¶¶ 35–36. UGSI has sufficiently alleged special damages.

### b.    Disparagement by implication

Palermo argues that UGSI's trade libel claim fails "as a matter of law because the alleged defamatory statements related to the fused PVC products in general rather than UGSI itself." Def.'s Mem. in Support of Mot. to Dismiss at 7. UGSI argues that it alleged disparagement by implication because UGSI is the only seller of butt-fused PVC

pipe in North America.

"California courts have not explicitly determined whether a cause of action for disparagement can exist where a publication does not expressly identify a disparaged product or business." *E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.*, 590 F. Supp. 2d 1244, 1252 (N.D. Cal. 2008). Nonetheless, at least one federal district court has found "that disparagement by implication is actionable under California law." *Id.* Further, the California Supreme Court has stated that in cases involving defamation and other injurious falsehoods, the requirement that the statement "be 'of and concerning,' the plaintiff" does not require the plaintiff be mentioned by name; instead he "may be identified by clear implication." *Blatty v. N.Y. Times Co.*, 42 Cal. 3d 1033, 1044 n.1, 728 P.2d 1177, 1184 n.1 (1986). Because UGSI alleges that it is the sole supplier of butt-fused PVC pipe in the United States, by implication Palermo's allegedly false statements targeted UGSI, and only UGSI. Compl. ¶ 16. A court in this district has allowed claims of disparagement by implication to survive a motion to dismiss in a similar case. *See, e.g., Morton Grove Pharm., Inc. v. Nat'l Pediculosis Ass'n, Inc.*, 494 F. Supp. 2d 934, 943 (N.D. Ill. 2007) (denying motion to dismiss IUDTPA trade disparagement claims even though the defendants did not name the product because the plaintiff was the sole manufacturer in the United States). UGSI has stated a claim for trade libel by implication.

### 2. Intentional interference with prospective economic advantage

#### a. *Noerr-Pennington* immunity

Palermo argues that the *Noerr—Pennington* doctrine immunizes him from liability for intentional interference with prospective economic advantage because his

statements were directed at municipal customers and non-profit associations that set pipe standards for municipalities. *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965). The *Noerr—Pennington* doctrine, originally developed in the antitrust context, has been applied in other areas to provide absolute immunity for those who exercise their First Amendment right to petition the government. *See Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 208 F.3d 885, 889 (10th Cir. 2000) ("To the extent that Supreme Court precedent can be read to extend *Noerr—Pennington* outside of the antitrust context, it does so solely on the basis of the right to petition.").

Courts applying *Noerr—Pennington* outside of the antitrust context have declined to grant immunity in cases involving fraud and misrepresentation. For instance, the U.S. Court of Appeals for the D.C. Circuit held that *Noerr—Pennington* "does not protect deliberately false or misleading statements." *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1123 (D.C. Cir. 2009) (holding *Noerr—Pennington* did not immunize a tobacco company that made knowingly false statements about the risks of smoking). This approach is consistent with the Supreme Court's holding in *McDonald v. Smith*, 472 U.S. 479 (1985), that the First Amendment right to petition did not provide absolute immunity to an individual who made libelous statements to the President. *Id.* at 485 ("The right to petition is guaranteed; the right to commit libel with impunity is not."). On a motion to dismiss, this Court assumes as true UGSI's allegations that Palermo intentionally made false statements about its products. The Court therefore declines to dismiss based on *Noerr—Pennington* immunity.

Even if Palermo's statements were not intentionally false, he would not be

entitled to immunity.  It does not appear that Palermo directly petitioned any government official.  At least one circuit has refused to confer immunity for statements made during communications between private parties.  *See Cardtoons*, 208 F.3d at 892 (refusing to grant immunity for prelitigation threats between private parties and noting that "[t]he plain language of the First Amendment protects only those petitions which are made to 'the Government'").

### b.    Failure to identify prospective economic benefit

Palermo also argues that UGSI's claim for intentional interference with prospective economic advantage is deficient because it does not identify any existing relationships with clients or prospective customers that were affected by Palermo's statements.  The elements of a claim intentional interference with prospective economic advantage under California law are:

> (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant.

*Youst v. Longo*, 43 Cal. 3d 64, 71 n.6, 729 P.2d 728, 733 n.6 (1987).  A plaintiff must show "that it is reasonably *probable* that the lost economic advantage would have been realized but for the defendant's interference."  *Id.* at 71, 729 P.2d at 733.

"[A] federal court sitting in diversity applies federal pleading requirements." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008).  Federal courts have required plaintiffs to allege a lost contract, failed negotiation, or ongoing business relationship to state a claim for intentional interference with prospective economic advantage under California law.  The Ninth

Circuit affirmed dismissal of an intentional interference claim when the plaintiff "failed to plead facts either showing or allowing the inference of actual disruption to its relationship with the Customers." *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008). There, the complaint alleged that the plaintiff had "been harmed because its ongoing business and economic relationships with Customers have been disrupted." *Id.* The court held that this was insufficient because the plaintiff "failed to plead facts either showing or allowing the inference of actual disruption to its relationship with the Customers" and because the plaintiff did not "allege, for example, that it lost a contract nor that a negotiation with a Customer failed." *Id.*

The court in *Sybersound* also cited with approval a district court decision dismissing an intentional interference claim. *Id.* (citing *Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1313 (N.D. Cal. 1997)). In that case, the court determined that the complaint contained no allegations "from which the court or defendants could infer the probable disruption of an actual economic relationship by means of alleged defamatory statements." *Silicon Knights, Inc.*, 983 F. Supp. at 1312. The court noted that "[t]he complaint does not allege that Silicon Knights was in the midst of negotiations . . . and that the third party pulled out of the negotiations or awarded business to another because of these alleged acts by Defendants." *Id. See also Newcal Indus., Inc. v. IKON Office Solutions, Inc.*, Nos. C 04–02776 JSW, C 10–5974 JSW, 2011 WL 1899404, at *6 (N.D. Cal. May 19, 2011).

Given these precedents, UGSI's allegations that its products "were being considered by several municipalities for upcoming projects" and that potential customers "were dissuaded" based on Palermo's statements are insufficient. Compl.

18

¶ 24.  UGSI's complaint also refers to two consulting engineers who expressed concerns about Palermo's reports and alleges that the company's pipes were "excluded from consideration by at least two consulting engineering firms."  *Id.* ¶¶ 34–36.  The complaint does not, however, identify any pending contract that was lost or negotiations that were thwarted by Palermo's alleged misrepresentations.  *Cf. Impeva Labs, Inc. v. Sys. Planning Corp.*, No. 5:12-CV-00125-EJD, 2012 WL 3647716, at *6 (N.D. Cal. Aug. 23, 2012) (plaintiff sufficiently alleged a relationship with a reasonable probability of future economic benefit when it had "engaged in business discussions" with a potential purchaser and the plaintiff later lost the bid).  The Court therefore dismisses UGSI's claim for intentional interference with prospective economic advantage, with leave to amend.

### 3.    Tortious interference with contract arguments

Palermo argues that UGSI has not stated a claim for tortious interference with contract because it does not identify any valid contract with a third party that Palermo caused to be breached.  To state a claim for tortious interference with contract under California law, a plaintiff must allege:  "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage."  *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1126, 791 P.2d 587, 589–90 (1990).  Federal courts considering such claims under California law have held that a plaintiff cannot survive a motion to dismiss unless it pleads "specific facts establishing the existence of valid contracts with third parties and [the defendant's] awareness of

such contracts." *F.M. Tarbell Co. v. A & L Partners, Inc.*, No. CV 10-1589 PSG EX, 2011 WL 1153539, at *4 (C.D. Cal. Mar. 23, 2011). *See also name.space, Inc. v. Internet Corp. for Assigned Names & Numbers*, No. CV 12-8676 PA PLAX, 2013 WL 2151478, at *8 (C.D. Cal. Mar. 4, 2013). Although UGSI claims that Palermo "intended to and did cause at least one customer to breach its contract with UGSI for Fusible PVC™ pipe," Compl. ¶ 71, to state a viable claim, UGSI must identify that or some other particular contract that was breached due to Palermo's actions.

### 4. Lanham Act

Palermo concedes that the Supreme Court's recent decision in *Lexmark International, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014), undercuts his argument that he cannot be liable for false advertising under the Lanham Act because he and UGSI are not direct competitors. *Id.* at 1392 (stating that it is "a mistake to infer that because the Lanham Act treats false advertising as a form of unfair competition, it can protect only the false-advertiser's direct competitors"). Palermo argues that UGSI's Lanham Act claim nonetheless should be dismissed because Palermo did not engage in "commercial advertising or promotion" as required under section 43(a) of the Lanham Act.

Section 43(a)(1)(B) permits a suit against anyone who "in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). Palermo argues that his face-to-face presentations are not "advertising or promotion" under the Lanham Act. UGSI, on the other hand, alleges that Palermo engaged in promotion by giving speeches and posting reports as a paid spokesperson

for UGSI's competitor, Performance Pipe.

Palermo mistakenly relies on the fact that many courts, including this one, have refused to allow Lanham Act claims when the alleged misrepresentations took place in face-to-face meetings with a small number of individuals. *See Installation Servs., Inc. v. Elec. Research*, Inc., No. 04 C 6906, 2005 WL 645244, at *2 (N.D. Ill. Mar. 21, 2005) (Kennelly, J.) (false statements made during an in person meeting were not "advertising or promotion" because they were not disseminated to the purchasing public); *Johnson Controls*, 152 F. Supp. 2d at 1082 (misrepresentation made to a single customer while negotiating a supply contract was not actionable). The Seventh Circuit has distinguished between "promotional material disseminated to anonymous recipients" to which the Lanham Act applies and "face-to-face communication" such as "a person-to-person pitch by an account executive." *First Health Grp. Corp. v. BCE Emergis Corp.*, 269 F.3d 800, 803–04 (7th Cir. 2001). As this Court has previously stated, the distinction rests on whether a communication is a "generalized solicitation rather than an individualized communication." *Organ Recovery Sys., Inc. v. Pres. Solutions, Inc.*, No. 11 C 4041, 2012 WL 2577500, at *4 (Kennelly, J.) (N.D. Ill. July 4, 2012).

Palermo cites *Sanderson v. Culligan International Co.*, 415 F.3d 620 (7th Cir. 2005), in which the Seventh Circuit held that three "person-to-person communications at trade shows" were not "promotional materials disseminated to anonymous recipients." *Id.* at 624 (internal quotation marks omitted). The Seventh Circuit, however, recently clarified that its holding in *Sanderson* did not mean that "'advertising or promotion' is always limited to published or broadcast materials" distributed to the general public. *Neuros Co. v. KTurbo, Inc.*, 698 F.3d 514, 521 (7th Cir. 2012). In *Neuros*, a

manufacturer of turbo blowers sued its competitor pursuant to the Lanham Act and the IUDTPA for giving false slide show presentations to "engineering firms that advise waste water treatment plants on which turbo blowers to buy." *Id.* at 518. In finding that the slide show presentations constituted "promotion" under the Lanham Act, the court observed that "there are industries in which promotion—a systematic communicative endeavor to persuade possible customers to buy the seller's product—takes a form other than publishing or broadcasting." *Id.* at 522. In *Neuros*, as here, "[t]he de facto customers . . . are the consulting engineers who manage the plants' bidding and purchasing." *Id.*

Because an activity is promotional if it involves dissemination to anonymous members of the purchasing public, Palermo's presentations to a large group of industry members for the purpose of directing customers to select Performance Pipe's products amount to "advertising or promotion" under the Lanham Act. *See Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1386 (5th Cir. 1996) (Coca-Cola's presentation designed "to target these independent bottlers and convince them, based on comparative sales statistics, to switch from 7UP to Sprite" was promotional); *Johnson Controls*, 152 F. Supp. 2d at 1081 (representations must "be disseminated sufficiently to the relevant purchasing public to constitute 'advertising' or 'promotion' within that industry"). The materials that were published on the Internet are also promotional under the Lanham Act. *See Neuros* Co., 698 F.3d at 522. For these reasons, the Court declines to dismiss UGSI's Lanham Act claim.

### 5.    IUDTPA

UGSI alleges that Palermo engaged in deceptive trade practices under the

IUDTPA by making false and misleading representations concerning the quality of UGSI's products. *See* 815 ILCS 510/2(a)(7)–(8). Palermo argues that UGSI cannot assert a claim under the statute because there is not a sufficient nexus to Illinois.

The Illinois Supreme Court has held that a plaintiff may sue under the ICFA only "if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 187, 835 N.E.2d 801, 853–54 (2005). Many courts have applied the reasoning in *Avery* to IUDTPA claims, and the Court agrees with those decisions. *See, e.g.*, *Purepecha Enters., Inc. v. El Matador Spices & Dry Chiles*, No. 11 C 2569, 2012 WL 3686776, at *14 (N.D. Ill. Aug. 24, 2012); *Miche Bag, LLC v. Be You, LLC*, No. 11 C 720, 2011 WL 4449683, at *6 n.3 (N.D. Ill. Sept. 26, 2011); *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 809 F. Supp. 2d 857, 859 (N.D. Ill. 2011); *In re Sears, Roebuck & Co.*, No. MDL-1703, 2006 WL 1443737, at *3 (N.D. Ill. May 17, 2006).

In *Avery*, the court refrained from articulating a "bright-line test" for determining whether a transaction occurred in Illinois. Instead, the court looked to factors including the plaintiff's residence, where the deception occurred, where the damage to the plaintiff occurred, and whether the plaintiff communicated with the defendant or its agents in Illinois. *Avery*, 216 Ill. 2d at 187–90, 835 N.E.2d at 854–55. Courts applying the *Avery* factors have dismissed claims that fail to allege sales or conduct directed to Illinois when no party was an Illinois citizen. *See, e.g., Miche Bag*, 2011 WL 4449683, at *6; *Sears, Roebuck & Co.*, 2006 WL 1443737, at *3 (granting motion to dismiss as to non-Illinois plaintiffs but denying motion as to Illinois plaintiffs).

In *Avery*, the court held that nonresident plaintiffs could not sue an Illinois

insurance company under the ICFA because "[t]he overwhelming majority of circumstances relating to the disputed transactions . . . occurred outside of Illinois for the out-of-state plaintiffs." *Avery*, 216 Ill. 2d at 187, 835 N.E.2d at 854. UGSI has not alleged that Palermo's misrepresentations "occurred primarily and substantially in Illinois." *Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 775 (N.D. Ill. 2008) (granting motion to dismiss because the Illinois plaintiffs "point to no allegations that plausibly suggest that the purported deceptive domain scheme occurred primarily and substantially in Illinois"). Apart from UGSI's claims that a Performance Pipe sales manager presented Palermo's materials at an Illinois conference and that Palermo contacted an Illinois customer after a pipeline incident, the bulk of the alleged misrepresentations took place outside of Illinois. UGSI alleges two examples of effects in Illinois—the two e-mails from Illinois engineers expressing concern about Palermo's reports. Those allegations do not mean that UGSI felt injury in Illinois. Apart from targeting some business to the state, UGSI has alleged no connection to Illinois. For this reason, the Court dismisses UGSI's IUDTPA claim, with leave to amend, assuming UGSI can do so in a way that includes a sufficient nexus to Illinois.

## Conclusion

For the foregoing reasons, the Court grants Palermo's motion to dismiss in part and denies it in part [dkt. no. 15]. The Court dismisses UGSI's IUDTPA, interference with prospective economic advantage, and interference with contract claims with leave to amend (Counts 2, 3, and 5) but declines to dismiss UGSI's Lanham Act and trade libel claims (Counts 1 and 4). UGSI has until October 13, 2014 to seek leave to amend, attaching a proposed amended complaint that it contends states viable claims under the

IUDTPA and for tortious interference.  Rule 26(a)(1) disclosures are likewise to be made by October 13, 2014.  The case is set for a status hearing on October 20, 2014 at 9:00 a.m., in chambers, to set a schedule for further proceedings.  The Court directs the parties to discuss and attempt to agree on a schedule to propose to the Court.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  September 22, 2014