**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| UNDERGROUND SOLUTIONS, INC., a Delaware corporation, | |
| Plaintiff, | |
| v. | Case No.: 13-cv-8407 |
| EUGENE PALERMO, a/k/a GENE PALERMO, | Judge Matthew Kennelly |
| Defendant. | |

**UNDERGROUND SOLUTIONS, INC.'S RESPONSE TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

<u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................... iii

INTRODUCTION ...................................................................................................... 1

ARGUMENT .............................................................................................................. 2

    I.    There is no Genuine Issue of Material Fact That Palermo Disparaged
        Fusible PVC Pipe in Violation of Section 43(a)(1)(B) of the Lanham Act ............ 2

        a.    UGSI is entitled to Injunctive Relief for Palermo's Lanham Act
              Violations ................................................................................................ 2

        b.    The Damages Suffered by UGSI are Compensable under the
              Lanham Act ............................................................................................. 5

        c.    The First Amendment Does Not Excuse Palermo's Violations of
              the Lanham Act ...................................................................................... 7

    II.    Genuine Issues of Material Fact Preclude Summary Judgment
        on UGSI's Trade Libel Claim ................................................................................ 10

        a.    Palermo's Statements About Fusible PVC Pipe were False ..................... 11

              i. At a Minimum, There is a Genuine Issue Over
                 Whether the Gist of Palermo's Presentations were
                 Substantially False ................................................................... 12

              ii. Palermo's Presentations Are Not Protected as
                 Opinions Offered in a Scientific Debate .................................. 13

        b.    Under California Law, UGSI Need Not Prove Actual Malice To
              Prevail On Its Trade Libel Claim ............................................................ 15

        c.    Palermo's Statements Were Made with Actual Malice ........................... 16

        d.    UGSI Has Suffered Damages as a Result of Palermo's
              Trade Libel ............................................................................................ 18

        e.    The Public Concern and Common Interest Privileges
              Do Not Apply ........................................................................................ 19

              i. The Common Interest Privilege Does Not Apply .................................. 20

              ii. The Public Concern Privilege Does Not Apply .................................... 22

i

III.    Genuine Issues of Material Fact Preclude Summary
        Judgment UGSI's False Advertising Claim Under
        Cal Bus & Prof § Code 17500 ............................................................................24

IV.     UGSI Has Complied with Rule 26 of the Federal Rules of
        Civil Procedure ...........................................................................................26


CONCLUSION.......................................................................................................................28

<u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 16 (7th Cir. 1992) ...........................................5

*Aetna Casualty & Surety Co. v. Centennial Ins. Co.*,
  838 F.2d 346, 351 (9th Cir. 1988) ....................................................................10, 11

*ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958,
  969 (D.C. Cir. 1990) .......................................................................................6

*Animal Legl Def. Fund v. HVFG LLC*, 2013 U.S. Dist. LEXIS 89169,
  *7 (N.D. Cal. June 25, 2013) ..........................................................................26

*Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal.App.4th 1017,
  1035 (Cal. App. 2002) ................................................................................10, 12

*Baker v. L.A. Herald Exam'r*, 42 Cal.3d 254, 260-61 ...........................................14

*Balance Dynamics Corp. v. Schmitt Indus.*, 204 F.3d 683,
  691-92 (6th Cir. 2000) ................................................................................6, 19

*BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081,
  1091 (7th Cir. 1994)....................................................................................4, 11

*Bolger v. Youngs Drugs Prods Corp.* 463 U.S. 60, 66-67 (1983) ..................................8

*Brown v. Kelly Broadcasting Co.*, 48 Cal. 3d 711, 739 n.24 (1989) .............................23

*Buckland v. Threshold Enterprises, Ltd.*, 155 Cal. App. 4th 798,
  818 (Cal. App. 2d 2007) ...............................................................................25

*Commonwealth Energy Corp. v. Investor Data Exchange, Inc.*,
  110 Cal. App. 4th 26, 34 (2003) ......................................................................22

*Daglian v. DeVry Univ., Inc.*, 2007 U.S. Dist. LEXIS 97797,
  *17 (C.D. Cal. Dec. 10, 2007) ........................................................................25

*Daniels Sharpsmart, Inc. v. Becton, Dickinson & Co*,
  2016 U.S. Dist. LEXIS 34964, *7-8 (N.D. Ill. Mar. 18, 2016) .................................9

*David v. Caterpillar*, 324 F.3d 851, 857 (7th Cir. 2003).........................................27

*Dun & Bradstreet v. Greenmoss Builders*, 472 U.S. 749, 761 (1985)....................22, 23

*Genderm Corp. v. Biozone Laboratories*, 1992 U.S. Dist. LEXIS 8527,
  *31 (N.D. Ill. June 12, 1992) .........................................................................4, 5

*Greenly v. Sara Lee Corp.*, 2008 U.S. Dist. LEXIS 35472,
   *32 (E.D. Ca. Apr. 29, 2008) ...................................................................18

*Hawran v. Hixson*, 209 Cal. App. 4th 256 (2012) ........................................20

*Jewett v. Capital One Bank*, 113 Cal. App. 4th 805, 815 (2003) .................24

*Jordan v. Jewel Food Stores, Inc.,* 743 F.3d 509, 516-17 (7th Cir. 2014) .................................8, 9

*Khawar v. Globe Internat.*, 19 Cal.4th 254, 275 (1998).........................16, 23

*Kwikset Corp. v. Superior Court*, 51 Cal.4th 310 (2011) .......................25, 26

*Leonardini v. Shell Oil*, 216 Cal.App.3d 547, 572 (1989)...........................19

*Lundquist v. Reusser*, 7 Cal. 4th 1193 (1994)..............................................21

*Maheu v. Hughes Tool Co.*, 569 F.2d 459, 466 (9th Cir. 1977) ...................13

*Mann v. Quality Old Time Serv.*, Inc.,
   120 Cal. App. 4th 90, 109 (2004) .............................................20, 21, 22

*Masson v. New Yorker Magazine*, 111 S.Ct. 2419, 2429 (1991)..................16

*McMann v. Wadler*, 189 Cal.App.2d 124, 129 (Cal. App. 1961)..................18

*Melaleuca, Inc. v. Clark.,* 66 Cal.App.4th 1344 (Cal. App. 4th Dist. 1998) ..........................15, 16

*Nat'l Presto Indus. v. Hamilton Beach, Inc.*, 1990 U.S. Dist. LEXIS 16768,
   *21 (N.D. Ill. Dec. 12, 1990) ...................................................................2

*Neuros v. Kturbo, Inc.*, 698 F.3d 514, 516 (7th Cir. 2012)................... passim

*Neuros Co. v. Kturbo, Inc.*, 2013 U.S. Dist. LEXIS 56095, *12 .....................5

*Nvidia Corp. v. Fed. Ins. Co.*, 2005 U.S. Dist. LEXIS 19599,
   *24 (N.D. Ill. Sept. 6, 2005) ...................................................................10

*Otis Clapp & Sons, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738,
   745 (7th Cir. 1985).....................................................................................6

*Palermo v. Underground Solutions, Inc.*, 2012 U.S. Dist. LEXIS 10711
   (S.D. Cal. Aug. 1, 2012) ..........................................................................10

*Peoples v. Taufest*, 274 Cal. App. 2d 630, 637 (1969) ................................22

*PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 931 (9th Cir. 2010).....................15

iv

*Polygram Records, Inc. v. Superior Court*, 170 Cal.App.3d 543,
    548-49 (1985)........................................................................................11

*Rancho LaCosta, Inc. v. Superior Court*, 106 Cal. App. 3d 646, 665 (Ct. App. 1980)...........20, 22

*Rosenaur v. Scherer*, 88 Cal.App.4th 260, 277 (2001)....................................17

*Rowe v. Bankers Life & Cas. Co.*, 2013 U.S. Dist. LEXIS 42168,
    *22 (N.D. Ill. 2003)............................................................................25

*Se-Kure Controls, Inc., v. Vanguard Prod. Group.*,
    2007 U.S. Dist. LEXIS 17228, *6 (N.D. Ill. Mar. 7, 2007)....................27

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134,
    1139 (9th Cir. 1997)............................................................................11

*Underwager v. Salter,* 22 F.3d 730, 736 (7th Cir. 1994)......................13, 14

*Vegod Corp. v. Am. Broad. Cos.*, 25 Cal. 3d 763, 770 (1979) ....................23

*Web Printing Controls Co. v. Oxy-Dry Corp.*, 906 F.2d 1202,
    1205 (7th Cir. 1990).............................................................................7

*Weinberg v. Feisel*, 110 Cal.App.4th 1122, 1132 (2003) ..........................22

*World Fin. Group, Inc.  v. HBW Ins. & Fin. Svs., Inc.*,
    172 Cal. App. 4th 1561, 1567 (2009) ..........................................23, 24

*World Kitchen, LLC v. Am. Ceramic Soc'y*, 2015 U.S. Dist. LEXIS 123166,
    *5 (N.D. Ill. Sep. 15, 2015) ..................................................................9

<u>Rules</u>

Fed. R. Civ. P. 26..........................................................................................27

<u>Statutes</u>

15 U.S.C. § 1116(a) .......................................................................................2

15 U.S.C. § 1117(a)(2).....................................................................................6

Cal. Civ. Code §47(c) ....................................................................................20

Cal. Bus & Prof Code § 17500 ......................................................................24

**INTRODUCTION**

This case does not involve a scientific debate and does not invoke the protection of the First Amendment. This case involves a knowingly false and deceptive promotional campaign to damage the reputation of a company in exchange for money. Fusible PVC® pipe is a product that is highly reliable for use in municipal pipeline applications and exclusively manufactured by Underground Solutions, Inc. ("UGSI"). Between 2010 and 2013, the defendant, Eugene Palermo ("Palermo"), gave presentations about Fusible PVC® pipe at water industry trade conferences across the United States. At the time, he was a paid spokesperson for competitors of UGSI in the pipe industry, including the largest manufacturer of HDPE pipe, a fact he did not voluntarily disclose to his audiences. There is no genuine dispute his presentations were false, misleading and intended to persuade consumers to buy HDPE pipe over Fusible PVC® pipe. UGSI filed this action in November 2013 to halt Palermo's dishonest attacks and to recover damages incurred as a result of his wrongful conduct. With discovery now closed, Palermo has moved for summary judgment on all of UGSI's claims, including false advertising under the Lanham Act, false advertising under California state law, and common law trade libel. At the same time, UGSI has moved for partial summary judgment on its Lanham Act claim because it has established no genuine issue exists over Palermo's liability for false advertising and UGSI's right to injunctive relief under the Lanham Act. With respect to UGSI's remaining state law claims, however, genuine issues preclude summary judgment and demand resolution by a trier of fact. Accordingly, this Court should deny Palermo's motion for summary judgment.

**ARGUMENT**

I.  **There is no Genuine Issue of Material Fact That Palermo Disparaged Fusible PVC®
    Pipe in Violation of Section 43(a)(1)(B) of the Lanham Act.**

Palermo moves for summary judgment on UGSI's disparagement claim under the Lanham
Act based on three grounds. (*See* Dkt # 90, Palermo's Memorandum of Law in Support of His
Motion for Summary Judgment ("Defendant's Memorandum"), pp. 24-31). First, he argues his
presentations are non-commercial speech and thus entitled to First Amendment protection. Second,
he claims UGSI's damages are not recognized under the Lanham Act. Third, he argues his
statements about Fusible PVC® pipe are true.

In response, UGSI incorporates its motion for partial summary judgment on Count IV of
its Amended Complaint under Section 43(a)(1)(B) of the Lanham Act. (*See* Dkt # 85, UGSI's
Memorandum of Law in Support of its Motion for Partial Summary Judgment ("UGSI
Memorandum")). In that motion and supporting memorandum of law, UGSI established the
absence of a genuine issue over Palermo's liability for false advertising and reserved its right to
present evidence of its damages at trial. *Nat'l Presto Indus. v. Hamilton Beach, Inc.*, 1990 U.S.
Dist. LEXIS 16768, *21 (N.D. Ill. Dec. 12, 1990) (granting partial motion for summary judgment
on Lanham Act count on liability only and reserving the determination of damages for trial).
UGSI's losses are compensable as "actual damages" under the Lanham Act. Lastly, Palermo's
statements fail to qualify as commercial speech under the prevailing Seventh Circuit law and thus
his Constitutional arguments should be rejected.

   a.  **UGSI is entitled to Injunctive Relief for Palermo's Lanham Act Violations.**

The undisputed evidence in this case establishes that Palermo disparaged UGSI's Fusible
PVC® pipe in violation of Section 43(a)(1)(B) of the Lanham Act and that UGSI is entitled to
injunctive relief. 15 U.S.C. § 1116(a). Under *Neuros v. Kturbo, Inc.*, Palermo's statements qualify

as interstate commercial promotion. 698 F.3d 514, 516 (7th Cir. 2012). In *Neuros*, the plaintiff sued a competitor that presented false and misleading PowerPoints about the plaintiff's product at industry road shows. *Id*. at 516-18. The competitor also posted the defamatory PowerPoints on its website. *Id*. The Seventh Circuit held the speech constituted commercial promotion under the Lanham Act. *Id*. at 523. Here, Palermo gave PowerPoint presentations to industry insiders and consumers at water conferences throughout the country. He was being paid to give these presentations by Performance Pipe, the largest manufacturer of HDPE pipe. The false material was also posted on a website maintained for him by the Alliance for PE Pipe, an HDPE industry group. (*See* UGSI's Statement of Additional Facts in Opposition to Palermo's Motion for Summary Judgment ("Stmt. of Add. Facts"), ¶¶ 2-5). [1]

Palermo's presentations were also false and misleading. (*See* UGSI Memorandum, pp. 6-12). There is no genuine dispute, for example, that Palermo misrepresented the findings of Greenshields & Leevers' critical pressure testing on PVC pipe at 10% air. Palermo stated that Greenshields & Leevers found the S4 critical pressure of PVC pipe at 10% air was 1.6 bar, when the published study specifically showed the S4 critical pressure of the PVC pipe at 10% air was 2.3 bar. (Stmt. of Add. Facts, ¶¶ 7-10). Palermo even acknowledged this fact in a 2010 paper on rapid crack Propagation. (*Id*. at ¶ 23) ("How to Design Against Long Running Cracks in Plastic Pipe for Water Applications," p. 11, quoting Greenshields & Leevers). When the S4 critical pressure is converted to a full scale critical pressure that Palermo misrepresented to his audience applied to Fusible PVC® pipe, it paints the tremendously damaging impression that Fusible PVC® pipe has a significantly lower critical pressure than even Greenshields and Leevers determined the 1995 British PVC pipe they tested to have. *See Nueros*, 698 F.3d at 518 (false accusations about

---

[1]     In addition to submitting its own Statement of Additional Facts, UGSI submits a Response to Palermo's Statement of Undisputed Material Facts.

plaintiff's product were based on computational errors and incorrect assumptions). Ultimately, liability is proven because the tests cited by Palermo did not establish what he said they did. *See BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081, 1091 (7th Cir. 1994) (statements in the form of tests show *x* are literally false when the tests cited do not establish *x*); *see also Genderm Corp. v. Biozone Laboratories*, 1992 U.S. Dist. LEXIS 8527, *31 (N.D. Ill. June 12, 1992) (a product claim is false under the Lanham Act "if the representations cite tests or other authority that does not substantiate the claim made").

Palermo's testing errors did not end there. UGSI's partial motion for summary judgment details how Palermo applied scientifically unsuitable tests to Fusible PVC® pipe. (*See* UGSI Memorandum, pp. 10-12). He also used data based on a scenario (greater than 10% air in the pipe) that would compromise the reliability of *any* pipe. (Stmt. of Add. Facts, ¶ 12). The fracture resistance of PVC pipe in a normal operating condition of less than 2% air is more than twice as great as Palermo presented in the unrealistic, misleading 10% scenario. (*Id*.) He also withheld and distorted critical information about rapid crack propagation incidents. (*Id*. at ¶¶ 14-16). He misrepresented crack lengths and concealed varying causes of each incident, including contractor error and extreme over-bending. (*Id*.) This created the misimpression that Fusible PVC® pipe was inherently susceptible to rapid crack propagation and that it can occur even when the pipe is handled, installed and operated pursuant to industry standards. (*Id*.) This is undisputedly false.

UGSI also presented evidence in its partial motion that Palermo's presentations and website materially influenced the purchasing decisions of relevant consumers. Palermo admitted as much in an e-mail to Performance Pipe. (UGSI Memorandum, pp. 12-13; *see also* Stmt. of Add. Facts, ¶ 19) ("after the presentation, the gentleman came up to me and said he was debating whether to use fusible PVC or HDPE. After hearing my presentation, he decided he would use

HDPE"). Other UGSI customers and potential customers expressed concern with the content of Palermo's presentations, requiring UGSI to provide corrective information to retain certain business. (Stmt. of Add. Facts, ¶¶ 20-22); *see Neuros Co. v. Kturbo, Inc.*, 2013 U.S. Dist. LEXIS 56095, *12 (N.D. Ill. Apr. 17, 2013) (granting permanent injunction based on the inadequacy of a legal remedy where false promotional campaign will have lingering effects on plaintiff's business as consumers could believe falsehoods disseminated); *see also Genderm,* 1992 U.S. Dist. LEXIS 8527 at *29 (court may grant injunctive relief on the basis that the challenged representations have the tendency to deceive).

UGSI has sufficiently demonstrated that Palermo's false statements about Fusible PVC® pipe have "diminishe[d] [its] value in the minds of consumers." *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 16 (7th Cir. 1992) (reversing district court's denial of injunctive relief to plaintiff who established likelihood of success on false advertising violation). Injuries arising from Lanham Act violations are presumed to be irreparable, even without showing a specific business loss. *Neuros*, 2013 U.S. Dist. LEXIS 56095 at *7. UGSI will continue to suffer harm to its reputation and have to spend time and money rebutting Palermo's false and misleading material if an injunction is not entered. (Stmt. of Add. Facts, ¶ 35). Granting injunctive relief to prevent future disparagement by Palermo will further the public interest in truthful advertising. *Id*. at *14 (*quoting Abbott Labs*, 971 F.2d at 19. Accordingly, UGSI is entitled to injunctive relief under the Lanham Act enjoining Palermo from making future false or misleading statements about Fusible PVC® pipe.

### b. The Damages Suffered by UGSI are Compensable under the Lanham Act.

While UGSI's right to injunctive relief is clearly established, Palermo argues that UGSI's claimed damages are not recoverable as a matter of law. Specifically, Palermo argues UGSI lacks

proof of likely damage or likely confusion. (Defendant's Memorandum, p. 29). This argument ignores the testimony adduced in this case. For instance, Julie Morrison, an engineer in Illinois, reexamined her consideration of Fusible PVC® pipe for a municipal project based on false and deceptive materials published on Palermo's website. (Stmt. of Add. Facts, ¶ 20). Steve Verseman, a project manager at Baxter & Woodman, demanded confirmation of Fusible PVC® pipe's quality after being sent the Palermo Slide Show. (*Id*. at ¶ 21). In response, UGSI had to present material countering the slide show and correcting the record about whether Fusible PVC® pipe was inherently prone to fractures. (*Id*. at ¶ 22). Palermo even admitted his Michigan AWWA presentation caused a potential consumer not to select Fusible PVC® pipe. (*Id*. at ¶ 19). Thus, contrary to Palermo's contention, UGSI has presented sufficient evidence of how "persons actually react to the information Dr. Palermo provided them." (*See* Defendant's Memorandum, p. 9, fn. 9).

Moreover, UGSI has disclosed actual financial losses it suffered as a result of Palermo's disparagement. The Lanham Act permits the recovery of actual damages sustained by the plaintiff. 15 U.S.C. § 1117(a)(2). UGSI disclosed evidence of receipts and expenditures from sending employees around the country to counteract Palermo's false campaign. (Stmt. of Add. Facts, ¶¶ 32-33); *see also Otis Clapp & Sons, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 745 (7th Cir. 1985) (expenses incurred as part of a curative advertising campaign recoverable as actual damages); *Balance Dynamics Corp. v. Schmitt Indus.*, 204 F.3d 683, 691-92 (6th Cir. 2000) ("no court has excluded damage control costs from its definition of damages that are considered 'actual'"); *ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 969 (D.C. Cir. 1990) (actual damages include the costs of any completed advertising that actually and reasonably responds to the offending ads). This time and money was lost as a direct result of Palermo's wrongdoing and could have been used elsewhere in UGSI's business. (Stmt. of Add. Fact, ¶ 31). Palermo does not dispute the

legitimacy of these receipts or UGSI's efforts to counteract his false and misleading statements. They are appropriate for the jury to consider in awarding actual damages.

The jury may also consider awarding the profits earned by Palermo in making false and defamatory statements about Fusible PVC® pipe on behalf of the HDPE industry. (*Id*. at ¶ 34); *see also Web Printing Controls Co. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1205 (7th Cir. 1990) ("courts have fashioned wide-ranging relief for a violation of the Lanham Act, allowing remedies such as a recovery of defendant's profits … these remedies flow not from the plaintiff's proof of its injury or damage, but from its proof of the defendant's unjust enrichment or the need for deterrence"). UGSI also moved for its attorney's fees given that Palermo's violation of the Lanham Act were "especially egregious." (*See* UGSI Memorandum, pp. 14-15). Palermo's claim that summary judgment should be entered based on the inadequacy of UGSI's damages should be rejected.

### c. The First Amendment Does Not Excuse Palermo's Violations of the Lanham Act.

Palermo also claims Constitutional protection over his presentations. Speech that does not "propose a commercial transaction," according to Palermo, is entitled to full First Amendment protection. (Defendant's Memorandum, p. 25). This is not the complete, prevailing law. As stated recently by the Seventh Circuit, the *definition* of commercial speech is just the starting point of the analysis:

> Speech that does *no more than* propose a commercial transaction "fall[s] within the core notion of commercial speech," but other communications also may "'constitute commercial speech notwithstanding the fact that they contain discussions of important public issues...
>
> Although commercial-speech cases generally rely on the distinction between speech that proposes a commercial transaction and other varieties of speech, it's a mistake to assume that the boundaries of the commercial-speech category are marked exclusively by this "core" definition. To the contrary, there is a "commonsense distinction" between commercial speech and other varieties of speech, and we are to give effect to that distinction.

*Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 516-17 (7th Cir. 2014)

The *Jordan* Court held that whether speech is commercial turns on whether it (1) is an advertisement; (2) refers to a specific product, and; (3) the speaker has economic motivation for the speech. *Id.* (*citing Bolger v. Youngs Drugs Prods Corp.* 463 U.S. 60, 66-67 (1983)). Although no one factor is determinative, all three factors are easily met here. While they may not have been traditional advertisements, Palermo's presentations satisfy the Seventh Circuit's interpretation of "commercial advertising and promotion" in the context of Section 43(a)(1)(B) of the Lanham Act. *Neuros*, 698 F.3d at 522 (holding presentations at trade shows were commercial promotion and commenting "that methods of advertising and promotion are changing with innovations in communications media; they are no longer, if they ever were, confined to newspaper and magazine ads, radio and televisions commercials, and billboards"); *see also Jordan*, 743 F.3d at 518 ("modern commercial advertising is enormously varied in form and style").

Palermo's presentations also refer to a specific product. Palermo states the purpose of the presentation was to present information about how butt fused PVC pipe responded to critical pressure. (Defendant's Memorandum, p. 8). As UGSI is the exclusive manufacturer of butt-fused PVC pipe, however, references to that form of pipe should be treated as direct references to Fusible PVC® pipe. (Stmt. of Add. Facts, ¶ 1). Palermo was also economically motivated to give the challenged presentations. He was being paid by Performance Pipe, the largest manufacturer of HDPE pipe and a competitor of UGSI, and later by the Alliance for PE Pipe, an HDPE interest group. (*Id.* at ¶¶ 2-3).

Palermo's attempt to avoid the consequences of giving commercially disparaging presentations fail. He claims, for instance, that his presentations did not indicate he was consulting

8

with an HDPE group.[2] But, keeping one's financial motivations private does not eliminate them. Palermo also claims the purpose of his speeches was not commercial, but to improve the overall integrity of the plastic pipe industry. This claim is belied by the fact his entire catalogue of material on plastic pipe is critical of Fusible PVC® pipe, the product sold by the competitor of his sponsors, and strongly supportive of HDPE, the material sold by his sponsors.

In addition to characterizing his presentations as non-commercial, Palermo argues his work is entitled to protection as scientific dialogue and is a matter of public importance, two defenses he also raises with respect to UGSI's trade libel claim. (Defendant's Memorandum, pp. 27-28). But these defenses are defeated by the fact that Palermo's presentations were clearly promoting a commercial good – HDPE pipe. *Jordan*, 743 F.3d at 516 ("communications may constitute commercial speech notwithstanding the fact that they contain discussions of important public issues"). This type of speech does not become an academic opinion simply because it involves a technical subject matter and the speaker has an advanced degree. The scientific nature of Palermo's speech does not allow the Court to ignore its commercial purpose. *See e.g., Daniels Sharpsmart, Inc. v. Becton, Dickinson & Co*, 2016 U.S. Dist. LEXIS 34964, *7-8 (N.D. Ill. Mar. 18, 2016) (use of a scientific study in conjunction with communications to a competitor's clients and in promotional materials qualifies as commercial speech) (*citing World Kitchen, LLC v. Am. Ceramic Soc'y*, 2015 U.S. Dist. LEXIS 123166, *5 (N.D. Ill. Sep. 15, 2015) (denying summary judgment on question of whether scientific conclusions constituted commercial speech)).

The same type of speech was challenged in *Neuros*, where the CEO of a company presented a PowerPoint about a competitor's turbo blowers to facilitate waste water treatment. 698 F.3d at 517-19. There was science underpinning the presentation, but that did not immunize the CEO from

---

[2]     In his presentation, "Characteristics of Thermoplastic Pipe Joined by Butt Fusion," Palermo did identify that he was presenting on behalf of Chevron Phillips Chemical Company LP (known as Performance Pipe).

presenting erroneous data and making false and misleading statements aimed at taking out his competitor. This Court should reject Palermo's attempt to redefine a disparaging promotional campaign as worthy of First Amendment protection merely because it involved a technical matter and could impact the public in an indefinite way. Further, as described below in responding to Palermo's arguments against UGSI's trade libel claim, UGSI has presented evidence that Palermo's statements were made with actual malice. *Id.* at 519 ("the public interest, whatever its precise boundaries, is forfeited if the statement is made with knowledge of its falsity or with reckless disregard for the truth"). Palermo's motion for summary judgment as to Count IV should be denied. [3]

## II. Genuine Issues of Material Fact Preclude Summary Judgment on UGSI's Trade Libel Claim.

Genuine issues of material fact preclude the entry of summary judgment on UGSI's trade libel claim, which is pleaded under Count I of its Amended Complaint. Under California law, trade libel, which is also known as product disparagement, is "an intentional disparagement of the quality of property, which results in pecuniary damage…" *Nvidia Corp. v. Fed. Ins. Co.*, 2005 U.S. Dist. LEXIS 19599, \*24 (N.D. Ill. Sept. 6, 2005) (*quoting Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal.App.4th 1017, 1035 (Cal. App. 2002)). Disparagement in this context "includes statements about a competitor's goods that are untrue or misleading and are made to influence potential purchasers not to buy." *Atlantic Mutual*, 100 Cal.App.4th at 1035. Trade libel is akin to unfair competition because it addresses injurious falsehoods that interfere with business. *Aetna*

---

[3] Palermo also raises a matter that is not directly relevant to the issues in this case – a previous lawsuit in which Palermo sued UGSI for violations of his publicity rights in relation to the website www.genepalermo.com. (Defendant's Memorandum, p. 28). Palermo misrepresents that UGSI created this website. It did not. (Stmt. of Add. Facts, ¶ 30). The underlying case was also dismissed on Palermo's motion for injunctive relief, in part, because the Court found the content of the website had no direct link with a commercial purpose of UGSI. *See Palermo v. Underground Solutions, Inc.*, 2012 U.S. Dist. LEXIS 10711 (S.D. Cal. Aug. 1, 2012).

*Casualty & Surety Co. v. Centennial Ins. Co.*, 838 F.2d 346, 351 (9th Cir. 1988) (*citing Polygram Records, Inc. v. Superior Court*, 170 Cal.App.3d 543, 548-49 (1985)). Trade libel requires (1) a disparaging publication, (2) which induces others not to deal with plaintiff, and (3) special damages. *Id.*

Palermo's statements about Fusible PVC® pipe not only constitute false advertising under the Lanham Act, but they satisfy the first element of trade libel - a disparaging publication. Further, while UGSI need not demonstrate actual malice in this case, it has presented evidence that Palermo's statements were made with knowledge of their falsity. Any dispute over this fact belongs with the jury. UGSI has also suffered special damages as a result of Palermo's tortious statements about Fusible PVC® pipe. Finally, the various state-law privileges Palermo contends immunize his false and misleading statements do not apply.

### a. Palermo's Statements about Fusible PVC® Pipe were False.

Palermo made false and disparaging statements about Fusible PVC® pipe. As noted above, Palermo explicitly referenced Greenshields & Leevers' critical pressure testing, but misrepresented that Fusible PVC® pipe had a lower critical pressure than what Greenshields & Leevers stated in their published study. Palermo also falsely impugned the characteristics of Fusible PVC® pipe by relying on testing of older, inferior pipe, and testing that was inapplicable to PVC pipe, and involved unrealistic testing conditions. (Stmt. of Add. Facts, ¶¶ 7-13). Both the Ninth and Seventh Circuits recognize that statements making explicit or implicit references to product testing "may be proven false by showing that the tests are not sufficiently reliable to permit one to conclude with reasonable certainty that they established the claim made." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997); see *also BASF*, 41 F.3d at 1091.

11

Palermo also falsely reported crack lengths experienced in alleged incidents of rapid crack propagation (at times, as egregious as 100 times longer than the actual crack itself). He misled audiences on the varying causes of rapid crack propagation incidents in an effort to create the false impression that Fusible PVC® pipe was susceptible to cracking without an initiating event. (Stmt. of Add. Facts, ¶¶ 14-16); *see also Atlantic Mutual*, 100 Cal.App.4th at 1035 (disparagement includes statements about a competitor's goods that are misleading). These false and misleading statements supported UGSI's federal false advertising claim and fulfill the first element of trade libel under California law.

### i. At A Minimum, There is a Genuine Issue over Whether the Gist of Palermo's Presentations Were Substantially True.

While Palermo's presentations included tiles such as "Plastic Pipe For Water Distribution - What You Need to Know about RCP and Butt Fusion Integrity," and "How To Design Against Long Running Cracks In Plastic Pipe For Water Applications," Palermo now argues the "gist" was much narrower – "that rapid crack propagation poses a risk to Fusible PVC® pipe, especially when excessive air becomes entrapped within the line and reduces critical pressure." (Defendant's Memorandum, p. 8). This attempt to mischaracterize a broadly purposed, financially-driven, commercial presentation about Fusible PVC® pipe into scientific minutia does not withstand scrutiny. Palermo was being paid by the largest manufacturer of HDPE pipe – a relationship he did not willingly disclose – to make presentations about a competing product at industry conferences. (Stmt. of Add. Facts, ¶¶ 2 and 6). Palermo's campaign was also subsidized by an HDPE interest group, the Alliance for PE Pipe. (*Id*. at ¶ 3). Contrary to his "gist" argument, Palermo's presentations did not focus exclusively on critical pressure of Fusible PVC® pipe, but compared it (deceptively) to HDPE pipe, the product sold by his sponsors. Tellingly, he did not

compare the cracking propensity of Fusible PVC® pipe to non-HDPE pipes, including ductile iron pipe. (Stmt. of Add. Facts, ¶ 17).

Moreover, UGSI has presented evidence that the "gist" of Palermo's presentation is, in fact, false. Palermo's methodology and conclusions have been challenged and determined to be inaccurate, including by his own expert witness, Dr. Patrick Leevers. (Stmt. of Add. Facts, ¶ 10). Further, Dale Edwards, UGSI's expert, concluded that Palermo distorted facts, utilized calculations he knew were wrong, and set forth a flawed and unsubstantiated recommendation to use HDPE pipe to avoid rapid crack propagation. (*Id.* at ¶¶ 11-12 and 14-15). UGSI's other expert, Steve Ferry, describes Palermo's presentations on the reliability of butt fused PVC® pipe joints as incorrect on numerous points and quite misleading. (*Id.* at ¶ 11). This evidence demonstrates that Palermo made multiple misrepresentations that were materially false. Thus, at a minimum, there is sufficient evidence to raise a genuine issue of material fact regarding the material falsity of Palermo's statements. The trier of fact is the appropriate party to weigh these experts' contentions and resolve any disagreement over the substantial truth of Palermo's statements. *Maheu v. Hughes Tool Co.*, 569 F.2d 459, 466 (9th Cir. 1977) (determination of substantial truth as asserted by parties' experts should have been left to the jury rather than being decided by the court on summary judgment).

### ii. Palermo's Presentations Are Not Protected as Opinions Offered in a Scientific Debate.

In response to mounting evidence that he relied on fabricated data to further a commercial agenda, Palermo attempts to characterize his presentations as non-actionable scientific opinion. The case cited in support of this argument, however, was not decided on the issue of fact versus opinion, but on the issue of actual malice. (Defendant's Memorandum p. 9 *citing Underwager v. Salter,* 22 F.3d 730, 736 (7th Cir. 1994)). In *Underwager*, the plaintiffs, two researchers, wrote a

13

book about the unreliability of the memories of alleged child sex abuse victims. *Id*. at 731. Their theory and work as expert witnesses became the subject of a news program in Australia. After the program was broadcast, they sued several defendants for defamation, including a researcher who criticized their work on the news program and in writing and the director of an advocacy group who rebroadcast the news program in workshops across the United States. *Id*. at 732.

At issue on appeal was whether summary judgment should have been granted because the plaintiffs did not establish actual malice. The Seventh Circuit, applying Wisconsin law, held the plaintiffs were limited purpose public figures, and had the burden of establishing actual malice. Nothing in the record suggested the defendants knew they were making false statements or that they might be doing so but barged ahead without checking. As a result, the Court affirmed summary judgment, reasoning that actual malice was lacking. *Id*. at 734-36.

*Underwager* does not establish that "scientific disputes [are] a species of non-actionable opinion." (Defendant's Memorandum p. 9). Moreover, the subject matter in *Underwager* was the reliability of victim's memories, not the relative characteristics of a commercial product. The defendants were not paid by a business competitor of the plaintiff. Here, Palermo not only concealed his affiliation with the HDPE industry, but presented his findings as unassailable, scientific fact, complete with distorted data and charts. (Stmt. of Add. Facts, ¶ 6). For example, Palermo unambiguously states that the critical pressure of butt fused PVC pipe at 10% air is 121 psig, when the studies he relies upon demonstrate that the critical pressure is 237 psig at 2% air. (*Id*. at ¶¶ 8-9). With respect to the information he gave on rapid crack propagation incidents, he did not speak in terms of approximations, or hypothesis, but in terms of technical fact. *Baker v. L.A. Herald Exam'r*, 42 Cal.3d 254, 260-61 (statement that is "cautiously phrased in terms of apparency" is less likely to be understood as a statement of fact). Given this evidence, the trier of

fact should decide whether the language used by Palermo was reasonably understood to be factual. *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 931 (9th Cir. 2010) (whether a statement is nonactionable opinion or actionable misrepresentation of fact is a question of fact for the jury).

> **b.     Under California Law, UGSI Need Not Prove Actual Malice To Prevail On Its Trade Libel Claim.**

Palermo also claims that "California courts require actual malice in product disparagement cases." In support of his contention, Palermo cites *Melaleuca, Inc. v. Clark.* (Defendant's Memorandum, p. 15 citing 66 Cal.App.4th 1344 (Cal. App. 4th Dist. 1998)). The holding in *Melaleuca* is not so broad, however, and does not apply to the facts of this case. In that case, the plaintiff manufactured a wide variety of consumer products. *Id*. at 1350-51. The defendant stated in two books that, by using a new device she developed called a "syncrometer," she found the allegedly carcinogenic chemical "benzene in a number of household products and foods, including Melaleuca's products." *Id*. at 1351.

The California appellate court recognized that, regardless of whether or not the defamatory statements involved matters of public concern, "a private person need prove only negligence (rather than malice) to recover for defamation" to their reputation. *Id*. at 1359-60. However, "where a defendant's statements do not impugn the reputation of a plaintiff, there is considerably less justification for permitting liability to be imposed on the basis of negligence alone." *Id*. at 1360. Thus, where "the unique interest individuals and business organizations have in their reputations is not implicated," a showing of actual malice would be required. *Id*. The court found that because the defendant's statements were directed solely at the plaintiff's products and did not implicate the plaintiff's reputation, actual malice was required. *Id*. at 1364-65.

*Melaleuca* holds that if the disparaging remarks do not implicate the plaintiff's reputation, a showing of actual malice, rather than negligence, is required to establish trade libel. *Id*. at 1364-

15

65. As this Court has already recognized, UGSI "is the sole supplier of butt-fused PVC pipe in the United States, by implication Palermo's allegedly false statements targeted UGSI, and only UGSI." (*See* Dkt # 38, page 15). Accordingly, because USGI is the exclusive provider of butt-fused PVC pipe in North America, the primary product upon which USGI's reputation in the water and wastewater market is based, Palermo's statements defame not only Fusible PVC® pipe as a product, but also UGSI as a company. (Stmt. of Add. Facts, ¶ 1). Accordingly, under *Melaleuca*, UGSI must only demonstrate Palermo was negligent.

### c. Palermo's Statements Were Made with Actual Malice.

Notwithstanding that actual malice is not required in this case, the evidence disclosed raises a genuine dispute over whether Palermo knew his statements were false or acted with reckless disregard regarding their accuracy. Palermo argues the purpose of his presentations was to improve the overall integrity of plastic pipe installed for projects. (Defendant's Memorandum, p. 26). While that is belied by his financial ties to the HDPE industry and his gross misstatements about Fusible PVC® pipe, actual malice is not the same as ill motive. *Masson v. New Yorker Magazine*, 111 S.Ct. 2419, 2429 (1991) (actual malice should not be confused with the concept of malice as an evil intent or a motive arising from spite or ill will). Rather, actual malice is found when the speaker knew his statements were false or entertained serious doubts as to the truth of his publication. *Khawar v. Globe Internat.*, 19 Cal.4th 254, 275 (1998).

UGSI has presented convincing evidence of actual malice. UGSI sent Palermo a letter dated March 17, 2012 detailing many of the misrepresentations and misleading statements that are the subject of this lawsuit, and demanding that he cease and desist all dissemination of the false and misleading information. (Stmt. of Add. Facts, ¶ 24). Palermo chose to ignore that demand without modifying his materials and continued to give disparaging presentations about Fusible

16

PVC® pipe. (*Id.* at ¶ 25). Palermo was made further aware of UGSI's position when UGSI employee Robert Walker submitted a paper to the AWWA C605 committee detailing Palermo's dissemination of false and misleading information, including his misrepresentation of the Greenshields & Leevers' testing, his use of 10% as an improper basis for determining critical pressure, and the inapplicability of the testing relied on by Palermo to reach his conclusions. (*Id.* at ¶ 28). Palermo was a member of this committee and would have received the submission. (*Id.*); *see also Rosenaur v. Scherer*, 88 Cal.App.4th 260, 277 (2001) (actual malice can be supported by a purposeful avoidance of the truth or a deliberate decision not to acquire knowledge of facts that might confirm the probably falsity of the subject charges).

Furthermore, Palermo certainly knew in 2010 that Greenshields and Leevers' research found that at 10% air, the S4 critical pressure of the PVC pipe tested in 1995 was 2.3 bar, and quoted that finding in a paper he authored that is still available on his website as of the writing of this brief. (Stmt. of Add. Facts, ¶ 23). Nevertheless, in March 2013, Palermo misrepresented those findings as 1.6 bar to his audience at the MWRA conference, and posted that same presentation on his website. (*Id.* at ¶¶ 4 and 9).

Even more egregious than Palermo's failure to investigate the truth of UGSI's cease and desist letter and the AWWA submission is the fact that he admitted to Mr. Walker in July 2013 that he no longer believed Fusible PVC® pipe's butt-fused joints were unreliable or demonstrated a poor failure rate:

> I will no longer provide negative information about butt fusion of PVC Pipe. I believe that UGSI has conducted significant testing to develop the proper butt fusion procedure for PVC Pipe and your field failure rate is very low…

(Stmt. of Add. Facts, ¶ 26).

Despite making this clear and unequivocal admission that he had no basis to disparage the joint reliability of UGSI's Fusible PVC® pipe, Palermo continued his false promotional campaign (including by making presentations in Florida) and the false and misleading PowerPoint presentation criticizing UGSI's joints remained on his website, including as of the date of his deposition in October 2015. (*Id*. at ¶ 27).

These facts clearly raise a genuine issue (if not prove) Palermo's knowledge of the falsity of his statements about Fusible PVC® pipe or his recklessness in ascertaining the truth of his presentations. From this evidence, a jury could easily determine that Palermo acted with actual malice. *Greenly v. Sara Lee Corp.*, 2008 U.S. Dist. LEXIS 35472, *32 (E.D. Cal. Apr. 29, 2008) (actual malice is a question for the jury); *McMann v. Wadler*, 189 Cal.App.2d 124, 129 (Cal. App. 1961) ("the existence or nonexistence of malice is a question for the jury").

### d. UGSI Has Suffered Damages as a result of Palermo's Trade Libel.

UGSI has also set forth evidence of damages it suffered as a result of Palermo's tortious conduct. Palermo argues UGSI cannot identify a single customer that avoided purchasing Fusible PVC® pipe because of his statements. (Defendant's Memorandum, p. 19). But, Palermo himself admitted in an e-mail to Performance Pipe, and later in his deposition, that his presentation persuaded a consumer at the Michigan AWWA to use HDPE over Fusible PVC® pipe. (Stmt. of Add. Facts, ¶ 19). UGSI need not identify and call this individual at trial to establish it has suffered special damages. *See* Restat. 2d. of Torts, section 633, comment h ("widely disseminated injurious falsehood may ... cause serious and genuine pecuniary loss by affecting the conduct of a number of persons whom the plaintiff is unable to identify and so depriving him of a market that he would otherwise have found."). [4] UGSI also spent significant time and money to rebut Palermo's false

---

[4] California's adheres to the Restatement Second of Torts formulation for trade libel claims. *See Leonardini v. Shell Oil*, 216 Cal.App.3d 547, 572 (1989) ("California has adopted the Restatement formulation").

and misleading statements about Fusible PVC® pipe, including presenting a slide show to the executives of a project manager to refute the Palermo Slide Show. (Stmt. of Add. Facts, ¶¶ 22 and 31). Evidence of these expenditures have been disclosed, and are recognized as special damages. (*Id*. at ¶¶ 32-33); *see also* Restat. 2d. of Torts, section 633 (pecuniary loss, or special damages, includes expense reasonably necessary "to counteract the [disparaging] publication").

Limiting special damages exclusively to identifiable, missed business opportunities creates a perverse incentive not to counteract a disparaging publication so that a defendant's defamatory statements are allowed to fester into full-blown lost business opportunities. UGSI has spent thousands of dollars rebutting and counteracting Palermo's statements to rehabilitate the reputation of its company and Fusible PVC® pipe. (Stmt. of Add. Facts, ¶¶ 31-33). That they have been successful should not prevent them from presenting evidence of Palermo's trade libel to a jury. *See e.g. Balance Dynamics*, 204 F.3d at 691-92 ("it is unreasonable to expect a businessperson faced with a Lanham Act violation to sit idly by until a customer manifests actual confusion. The law should encourage quick responses and the mitigation of damages and should not require parties to suffer an injury before trying to prevent it"). To require UGSI abstain from defending their product to ensure their right to tort damages is preserved is commercially unreasonable and unnecessary given that the losses suffered by UGSI are recognized under California law and the Restatement Second of Torts.

> **e.**     **The Public Concern and Common Interest Privileges Do Not Apply.**

Palermo also argues that privileges found in California common and statutory law immunize his tortious statements. Palermo offers a superficial reading of these privileges. When examined closely, it is clear that neither the common interest nor the public concern privilege apply to Palermo's live presentations and website postings.

### i. The Common Interest Privilege Does Not Apply.

The "common interest" privilege of Section 47(c) of the California Civil Code "is recognized where the communicator and the recipient have a common interest and the communication is of a kind reasonably calculated to protect or further that interest." *Mann v. Quality Old Time Serv.*, Inc., 120 Cal. App. 4th 90, 109 (2004). A communication will be privileged if it is made without malice to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or (3) who is requested by the person interested to give the information." Cal. Civ. Code §47(c). California courts have limited the scope of this privilege:

> (1) The 'interest' applies to a defendant who is protecting his own pecuniary or proprietary interest; (2) The required 'relation' between the parties to the communication is a contractual, business or similar relationship, such as between partners, corporate officers and members of incorporated associations, or between union members and union officers; (3) The 'request' referred to must have been in the course of a business or professional relationship.

*Rancho LaCosta, Inc. v. Superior Court*, 106 Cal. App. 3d 646, 665 (Ct. App. 1980)

First, the material on www.plasticspipe.com cannot qualify for the common interest privilege because it is published on a national website. *Rancho LaCosta,* 106 Cal. App. 3d at 646; *see also Hawran v. Hixson*, 209 Cal. App. 4th 256 (2012) (defamatory press release did not qualify for privilege because it was disseminated "to the world at large via numerous Internet sources"). Palermo's live presentations fare no better.[5] In *Mann*, an industrial water systems company sued a

---

[5]     The case relied on by Palermo in arguing for this privilege, *Lundquist v. Reusser*, has no application to the present facts. (Defendant's Memorandum, p. 18 citing 7 Cal. 4th 1193 (1994)). The defendant in that case was not a paid spokesperson for one of the plaintiff's competitors, but rather an independent panelist speaker without undisclosed, commercial motives. *Id*. at 1197. Further, unlike Palermo, who specifically targeted Fusible PVC® pipe, the presenter in *Lundquist* made explicit efforts to *not* identify or target any specific breeder. *Id*. 1198 n.3.

competitor over its employees' defamatory statements, including that plaintiff was using illegal chemicals and illegally dumping them. 120 Cal. App. 4th at 100-01. The statements were made to the plaintiff's customers and the Environmental Protection Agency. The defendants "asserted that the conditional privilege applie[d] to all of their alleged defamatory statements because the governmental agencies and [plaintiff's] customers that they contacted were all interested in their statements." *Id*. at 109.

The court disagreed, reasoning: (1) there was no common "interest" as the defendants did not have any type of relationship with the plaintiff's customers, (2) there was no "request" because the defendant's approached and offered the defamatory statements to plaintiff's customers, and (3) the parties were business competitors, thus it was "not reasonable to assume that the motive of the communication was innocent; rather, it appear[ed the] defendants' only interest was to gain [plaintiff's] customers as their own." *Id*. The court cautioned that if it were to apply the privilege as the defendants' wished "business competitors would be free to publish defamatory statements about the business practices of a rival to its rival customers by merely contending the customers were 'interested' in the subject matter of the communication." *Id*.

The concern identified in *Mann* – that business competitors would be free to publish defamatory material to rival customers – warrants the rejection of the common interest privilege in this case. Palermo's presentations fulfilled his sponsor's objectives of dissuading potential customers from dealing with UGSI, a competitor of HDPE in the waste and wastewater industry. As recognized by the *Mann* court, if such an "interest" was sufficient to defeat a defamation claim, businesses would be free to employ "hired guns" to defame their competitors without consequence. *Id.* at 109. Had Palermo's audience been informed of his financial ties to the HDPE industry, it would not have been "reasonable" for them "to assume that the motive for the communication was

innocent." *Id*. Palermo's concealment of these financial ties this from his audiences supports the lack of "innocent motive" Section 47(c) requires.

Finally, Palermo was never "requested" to give his presentations. He reached out to conference organizers, forwarding unsolicited presentation materials and requesting the opportunity to speak. (Stmt. of Add. Facts, ¶ 18). The common interest privilege is not applicable where the defendant "sought out" his audience and the defamatory statements were "unsolicited." *Rancho La Costa*, 106 Cal. App. 3d at 666 (citing *Peoples v. Taufest*, 274 Cal. App. 2d 630, 637 (1969)). Once it became clear that Palermo's materials lacked scientific credibility and were commercially motivated, many of his papers and requests to speak were rejected. (Stmt. of Add. Facts, ¶ 18).

### ii. The Public Concern Privilege Does Not Apply.

Likewise, the "public concern" privilege does not apply. Whether speech addresses a matter of public concern is determined by the "expression's content, form, and context as revealed by the whole record." *Dun & Bradstreet v. Greenmoss Builders*, 472 U.S. 749, 761 (1985). "A matter of concern to the speaker and a relatively small, specific audience is not a matter of public interest." *Weinberg v. Feisel*, 110 Cal.App.4th 1122, 1132 (2003). Simply "because [USGI is] selling something that is intrinsically important does not mean that the public is interested in the fact that [USGI is] selling it." *Commonwealth Energy Corp. v. Investor Data Exchange, Inc.*, 110 Cal. App. 4th 26, 34 (2003). Similarly, that UGSI does business with municipal entities does not embroil USGI in a public controversy, make it a subject of public interest, or strip it of its right to protect its reputation. *Vegod Corp. v. Am. Broad. Cos.*, 25 Cal. 3d 763, 770 (1979). Nor does UGSI's receipt of public funds from municipalities convert its private business practices into a public controversy or topic of public interest. *Brown v. Kelly Broadcasting Co.*, 48 Cal. 3d 711,

739 n.24 (1989) (mere connection with public funds is too broad a basis on which to require a showing of malice). [6]

Palermo's attempt to retrospectively frame the subject of his presentations and website posts as involving communications about "public safety" and "worker safety" are unpersuasive because his "communications were not 'about' these broad topics, nor were they designed to inform the public of an issue of public interest, [but rather were] solicitations of a competitor's . . . customers undertaken for the sole purpose of furthering a business interest." *World Fin. Group, Inc. v. HBW Ins. & Fin. Svs., Inc.*, 172 Cal. App. 4th 1561, 1567 (2009); *see also Dunn*, 472 U.S. at 762 (where the speech at issue is "solely in the individual interest of the speaker and its specific business audience" it "warrants no special protection when … the speech is wholly false and clearly damaging to the victim's business reputation").

In *World Financial*, the defendant argued that a PowerPoint and flyers it sent to the plaintiff's customers and employees were protected speech regarding matters of public interest such as "the pursuit of lawful employment" and "workforce mobility and free competition." *Id.* at 1567. The court disagreed, stating "[w]hile employee mobility and competition are undoubtedly issues of public interest when considered in the abstract" it is "the *specific nature of the speech* rather than the generalities that might be abstracted from it" that determine whether they address an issue of public interest and First Amendment protections are implicated. *Id.* at 1570. The defendants were "erroneously identify[ing] generalities that might be derived from their speech rather that the specific nature of what they actually said and did." *Id.* at 1569. In examining the content of the communications at issue, the court found they did not contain any actual information

---

[6] Relying on the public concern privilege, Palermo once again attempts to introduce actual malice as part of UGSI's burden of proof. Regardless of whether the speech in question addresses a matter of public concern, however, California courts have "adopted a negligence standard for private figure plaintiffs seeking compensatory damages in defamation actions." *Khawar*, 19 Cal. 4th at 273-74. Further, UGSI has presented sufficient evidence of actual malice.

aimed to further public debate on an issue of public concern, and instead were clear efforts to solicit plaintiff's customers. *Id*. at 1572.

Here, Palermo's speech and his target audience confirm the absence of an issue of public concern. Palermo never contacted news media outlets, government entities, or municipal officers to alert them to the supposedly looming threat to the public's water quality and worker safety. Rather, his presentations were made to a specific target group of potential customers in the waste and wastewater industry. (Stmt. of Add. Facts, ¶ 5). As in *World Financial*, the information in this case was "not disseminated in the context of any purported ongoing controversy" regarding public safety, worker safety, or government resources. *Id*. at 1573. Rather, "the information was part of a competitor's pitch" to potential customers, "and was motivated solely by the competitor's desire to increase its sales." *Id*.; *see also Jewett v. Capital One Bank*, 113 Cal. App. 4th 805, 815 (2003) (to protect false statements simply "by virtue of the fact that they touch upon matters of general public interest would eviscerate unfair business practice laws"). Accordingly, this Court should reject Palermo's subjective characterization of his defamatory speech as affecting a matter of public concern.

**III.    Genuine Issues of Material Fact Preclude Summary Judgment UGSI's False Advertising Claim under Cal Bus & Prof § Code 17500.**

Palermo has also moved for summary judgment on UGSI's claim under California's false advertising law, Cal. Bus & Prof Code § 17500. Section 17500 proscribes not only advertising which is false, but also advertising that is "either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Daglian v. DeVry Univ., Inc.*, 2007 U.S. Dist. LEXIS 97797, *17 (C.D. Cal. Dec. 10, 2007). To state a claim under Section 17500, a plaintiff must allege: (1) a loss or deprivation of money sufficient to qualify for an injury in fact; an economic injury, and (2) show that the economic injury was the result of, i.e., caused by unfair

24

business practices or false advertising that is the gravamen of the claim." *Rowe v. Bankers Life & Cas. Co.*, 2013 U.S. Dist. LEXIS 42168, *22 (N.D. Ill. 2003) (*citing Kwikset Corp. v. Superior Court*, 51 Cal.4th 310 (2011)).

Palermo restates his Constitutional arguments as a basis for defeating this claim. (Defendant's Memorandum, pp. 20-21). As with the Lanham Act and trade libel counts, those arguments are unsuccessful. Palermo next argues UGSI lacks standing because it has not suffered an injury in fact and lost money or property as a result of such unfair competition. (*Id*. at pp. 21-23). This argument is based on the flawed premise that UGSI filed this action on behalf of California consumers deceived by Palermo's representations. That is not the case. As this Court has recognized, the purpose of the unfair competition and false advertising laws are to protect "*both* consumers *and competitors* by promoting fair competition in commercial markets for goods and services." (Dkt #58, p. 6). UGSI filed this lawsuit on its own behalf, as a competitor in the waste and waste water industry. Therefore, its statutory false advertising claims bears no resemblance to the private attorney general cases that Proposition 64 confronted. *Buckland v. Threshold Enterprises, Ltd.*, 155 Cal. App. 4th 798, 818 (Cal. App. 2d 2007) (dismissing consumer's unfair competition claim because she had merely made a token purchase and failed to demonstrate standing under Proposition 64).

Palermo argues that no case exists where a California court found a business had standing to pursue a false advertising claim to recover expenses it incurred in re-educating consumers. But, to the extent UGSI was "re-educating consumers," it was not doing so solely for their benefit, but for its own benefit, and to prevent a lost sale. The expenses incurred in doing so qualify under the broad definition of "lost money or property." *Kwikset*, 51 Cal. 4th at 323 ("There are innumerable ways in which economic injury from unfair competition may be shown … [including being] …

required to enter into a transaction, costing money or property, that would otherwise have been unnecessary"); *see also Animal Legl Def. Fund v. HVFG LLC*, 2013 U.S. Dist. LEXIS 89169, *7 (N.D. Cal. June 25, 2013) ("competitor has standing by reason of money or property spent to combat a proscribed business practice").

Palermo also claims that UGSI is relying on a "subjective belief" that consumers were misled. (Defendant's Memorandum, p. 23). Yet, UGSI has presented evidence that pipe consumers were misled by Palermo's statement, including a contractor, a project manager, and an attendee of the Michigan AWWA conference. (Stmt. of Add. Facts, ¶¶ 19-21). This demonstrates that not only are Palermo's statements likely to deceive a reasonable consumer, they have, in fact, materially influenced purchasing decisions. Because UGSI has presented sufficient evidence to raise a genuine dispute on this claim, Palermo's motion for summary judgment as to Count III of UGSI's Amended Complaint should be denied.

## IV. UGSI Has Complied with Rule 26 of the Federal Rules of Civil Procedure.

Palermo asserts that UGSI failed to supplement its Rule 26(a)(1) Disclosures with a specific calculation regarding its damages incurred as a result of Palermo's misconduct. In its Rule 26(a)(1) Disclosures, UGSI specifically stated, "UGSI estimates damages in excess of $425,000 in known losses, plus $25,000 in travel fees and lost time dealing with customers, contractors, and engineers responding to Defendants' misrepresentation." In addition, Palermo admits that subsequent to its Rule 26(a)(1) Disclosures, UGSI produced a spreadsheet and many pages of receipts relating to travel and UGSI employee time spent working to rehabilitate the reputation of UGSI and Fusible PVC® pipe caused by Palermo's false and misleading statements (hereinafter "UGSI's Damages Spreadsheet"). Although UGSI may not have labeled the spreadsheet as a

supplemental Rule 26(a)(1) disclosure, the information Palermo claims he lacked in ascertaining UGSI's damages is clearly included in the spreadsheet.

Rule 26(a)(1)(C) provides that a party must [] provide to other parties . . . a computation of any category of damages claimed by the disclosing party." Rule 26(e)(1) further provides that a party must "supplement at appropriate intervals its disclosures under subdivision (a) if the party learns that in some material respect the information is incomplete or incorrect and **if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."** Fed. R. Civ. P. 26 (emphasis added). The following factors guide the Court's discretion in determining whether to exclude evidence, as proposed by Palermo: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date. *See David v. Caterpillar*, 324 F.3d 851, 857 (7th Cir. 2003). Ultimately, the effect of Rules 26(e) and 37 is to exclude undisclosed evidence unless the information is made known to the other side in the context of the case itself. *See Se-Kure Controls, Inc., v. Vanguard Prod. Group*., 2007 U.S. Dist. LEXIS 17228, *6 (N.D. Ill. Mar. 7, 2007) (Cole, M. J.). Here, none of the factors weighs in favor of exclusion.

UGSI's Damages Spreadsheet was produced at UGSI 03638-40, and details the receipts that were produced by UGSI at UGSI 03578-3670. (Stmt. of Add. Facts, ¶¶ 32-33). UGSI's Damages Spreadsheet sets forth a total of $8,320.88 in airfare, $5,570.89 in hotel expenses, $882.91 in rental car fees, and $3,396.02 in meals and other related travel expenses. (*Id*). UGSI's Damages Spreadsheet also details 713 hours of UGSI time spent in travel and meetings with potential customers who were misled by Palermo. (*Id*). UGSI's documents and spreadsheet were provided to Palermo well before depositions were commenced in this action, and he had ample

opportunity to question the UGSI employees whose receipts and time are identified in UGSI's Damages Spreadsheet, and chose not to do so. Furthermore, to the extent the Court finds that UGSI is entitled to the amounts Palermo was paid by UGSI's competitors for preparing, presenting and posting these presentations on Palermo's website, those documents have been in Palermo's possession since the inception of the case. (*Id.* at ¶ 34). Palermo cannot establish any legitimate basis to support exclusion of damages evidence in this case.

## CONCLUSION

For the reasons set forth therein, UGSI respectfully requests this Court deny Palermo's Motion for Summary Judgment on Counts I, III and IV of UGSI's Amended Complaint.


Date: April 25, 2016

Respectfully submitted,

**Underground Solutions, Inc.**

/s/ Christopher T. Sheean
Christopher T. Sheean (A.R.D.C. #6210018)
Steven L. Vanderporten (A.R.D.C. #6314184)
Swanson, Martin & Bell, LLP
330 North Wabash, Suite 3300
Chicago, IL 60611
(312) 321-9100
Fax: (312) 321-0990