# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNDERGROUND SOLUTIONS, INC., a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> EUGENE PALERMO, a/k/a GENE PALERMO, <br><br> Defendant. | Case No.: 13-cv-8407 <br><br> Judge Matthew Kennelly |

## UNDERGROUND SOLUTIONS, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

ARGUMENT ....................................................................................................................... 1

    I.     Palermo's Presentations and Website Postings Constituted Commercial Promotion Under Section 43(a)(1)(B) of the Lanham Act ................................................................................................. 1

    II.    Palermo's Presentations Are Not Protected as Speech Affecting a Matter of Public Importance or Scientific Dialogue ................................................................................................. 3

    III.   Palermo Does Not Raise a Genuine Issue of Material Fact Regarding Whether the Content of His Presentations Was False and Misleading ................................................................................................ 4

          a.    UGSI's Expert Reports Are Sufficiently Trustworthy and Reliable to Consider on Summary Judgment ............................................. 5

          b.    Palermo Does Not Raise a Genuine Issue Over the Literal Falsity of his References to Greenshields & Leevers' Critical Pressure Testing ................................................. 6

          c.    Palermo Does Not Raise a Genuine Issue Over the False and Misleading Nature of His Statements on Incidents of Rapid Crack Propagation ........................................................ 8

          d.    Palermo Does Not Raise a Genuine Issue of Material Fact Over His Use of Inapplicable Tests and Standards ..................................... 9

    IV.   UGSI Has Established Consumer Reliance on Palermo's False and Misleading Statements .......................................................................... 10

    V.    UGSI is Entitled to a Permanent Injunction Enjoining Palermo from Making Future False and Misleading Statements About Fusible PVC® Pipe ................... 13

    VI.   UGSI is Entitled to Its Attorney's Fees ................................................................ 15

CONCLUSION ................................................................................................................ 15

TABLE OF AUTHORITIES

Cases

*Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 13 (7th Cir. 1992) .................... 9, 13, 14

*BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081, 1091 (7th Cir. 1994) ................................. 7

*B Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 971 (7th Cir. 1999) ........... 10, 11, 13

*Daniels Sharpsmart, Inc. v. Becton, Dickinson & Co*, 2016 U.S. Dist. LEXIS 34964,
   *7-8 (N.D. Ill. Mar. 18, 2016) ................................................................................................ 3

*eBay v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) ................................................................ 14

*Engineered Abrasives, Inc. v. Am. Mach. Prods. & Serv.*, 2015 U.S. Dist. LEXIS 33691,
   *31 (N.D. Ill. Mar. 18, 2015) .............................................................................................. 15

*Hope v. Hewlett-Packard Co.*, 2016 U.S. Dist. LEXIS 26878,
   *4-5 (E.D. Mich. Mar. 3, 2016) ............................................................................................ 6

*In re Iron Workers Local 25 Pension Fund*, 2011 U.S. Dist. LEXIX 34505,
   *32-33 (E.D. Mich. May 21, 2011) ....................................................................................... 6

*Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 517 (7th Cir. 2014) ..................................... 2, 3

*Lexmark Int'l v. Static Control Components, Inc.* 134 S. Ct. 1377, 1391 (2014) ........................ 11

*Lott v. Levitt*, 469 F.Supp.2d 575, 585 (N.D. Ill. 2007) ................................................................. 8

*Market Track, LLC v. Efficient Collaborative Retail Mktg., LLC*, 2015 U.S. Dist. LEXIS
   75916, *21 (N.D. Ill. June 11, 2015) ................................................................................ 8, 14

*Nat'l Fin. Partners Corp. v. Paycom Software, Inc.*, 2015 U.S. Dist. LEXIS 74700,
   *37 (N.D. Ill. June 10, 2015) ............................................................................................... 14

*Nat'l Inspection & Repairs, Inc. v. George S. May Int'l Co.*, 600 F.3d 878, 882
   (7th Cir. 2010) ....................................................................................................................... 9

*Neuros Co. v. Kturbo, Inc.*, 698 F.3d 514, 522 (7th Cir. 2012) .................................. 2, 3, 4, 11, 15

*Parker v. Four Seasons Hotel, Ltd.*, 2014 U.S. Dist. LEXIS 43870,
   at *9 (N.D. Ill. Mar. 31, 2014) .............................................................................................. 5

*PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 126-27 (4th Cir. 2011) ...................... 14

*Pellegrini v. Ne. Univ.*, 2013 U.S. Dist. LEXIS 150447 (D. Mass. Aug. 23, 2013) ....................... 4

*StormWater Structures, Inc. v. Platipus Anchors, Inc.*, 2010 U.S. Dist. LEXIS 11900,
   *24 (S.D. Tex. Feb. 11, 2010) ............................................................................................... 6

*Underwager v. Salter*, 22 F.3d 730, 734 (7th Cir. 1994) .................................................................. 9

UGSI is entitled to partial summary judgment on its request for injunctive relief on its Lanham Act claim because Palermo has failed to demonstrate the existence of any genuine issue of material fact to rebut UGSI's evidence that Palermo has made false and misleading statements regarding UGSI's Fusible PVC® pipe that have actually misled consumers. Palermo opposes UGSI's motion based on the inaccurate presumption that speech touching upon a scientific matter is shielded from product disparagement laws. The law does not, however, confer protection to false statements that disparage a competitor's product for the purpose of gaining market share. Palermo plainly promoted HDPE pipe by providing false information about the quality and characteristics of Fusible PVC® pipe and by withholding material information about incidents of rapid crack propagation. The harm suffered by UGSI is irreparable because consumers have been misled by Palermo's statements. This Court should grant UGSI's motion for partial summary judgment.

## ARGUMENT

### I. Palermo's Presentations and Website Postings Constituted Commercial Promotion Under Section 43(a)(1)(B) of the Lanham Act.

Palermo argues his presentations were not "commercial in nature" and fall outside the reach of the Lanham Act. (Dkt # 109, Palermo's Memorandum in Opposition to UGSI's Motion for Partial Summary Judgment ("Opp."), p. 1). Palermo's attempt to downplay the commercial nature of a multi-year, cross-country campaign sponsored by the HDPE industry fails. As set forth in UGSI's memorandum of law in support of its partial motion, Palermo's presentations were not merely an unfavorable portrayal of Fusible PVC® pipe, but a targeted, deceptive attack based on false and misleading statements. His compensation from the HDPE industry was neither attenuated nor intermittent. Palermo was paid by Performance Pipe, the largest manufacturer of HDPE pipe and a competitor of UGSI, and the Alliance for PE pipe, an HDPE trade group, to give speeches critical of Fusible PVC® pipe. (Dkt # 87-1, pp. 14-16, attached as Exhibit B to Stmt. of Facts).

Palermo's presentations also referred to specific products, brands, and, companies. The

1

presentation repeatedly referred to PE and PVC pipe, which are competing plastic pipe products, and to butt-fused PVC pipe and "FPVC" (the same acronym Palermo uses for Fusible PVC® pipe in his summary judgment briefs). (Dkt # 87-2, p. 50 – Dkt # 87-5, p. 14, Exhibit F to UGSI's Statement of Undisputed Material Facts In Support of Its Motion for Summary Judgment ("Stmt. of Facts")). Also, because UGSI "is the sole supplier of butt-fused PVC pipe in the United States, by implication Palermo's allegedly false statements targeted UGSI, and only UGSI." (Dkt # 38, p. 15). These presentations satisfy the Seventh Circuit's prevailing doctrine for determining commercial speech. *See Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 517 (7th Cir. 2014) (whether speech is commercial generally turns on whether it is an advertisement, refers to a product, and the speaker has economic motivation for the speech).

To the extent Palermo suggests his relationship with the HDPE industry and his disparagement of Fusible PVC® pipe were not indicative of an economic motive, the context and audiences of Palermo's presentations confirm the commercial intent of his speech.[1] Palermo's materials were not published in an academic medium, such as a peer-reviewed journal, but rather at trade shows and on a website paid for by a trade group. (Dkt # 66, pp. 8-18; *see also* Stmt. of Facts, ¶¶ 13-16).

In *Neuros v. KTurbo*, the Seventh Circuit held that PowerPoint presentations given at trade shows (and website postings of the same) by a business competitor of the plaintiff qualified as "commercial promotion" under Section 43(a)(1)(B) of the Lanham Act. 698 F.3d 514 at 522. Palermo's attempt to distinguish *Neuros* is unconvincing. He claims the evidence here is "not close

---

[1] Palermo's commercial speech argument blends two arguably distinct concepts – commercial speech under the First Amendment and "commercial advertising or promotion" under the Lanham Act. In *Jordan*, the Seventh Circuit expressed serious doubt over whether speech that was considered "noncommercial" in the constitutional sense would provide a complete defense to Lanham Act claims. 743 F.3d at 514. The Court noted "[i]t is true that each of the statutory and common-law claims alleged here has a "commercial" element in one form or another, but it's not clear that the Supreme Court's commercial-speech doctrine should be used to define the term in each cause of action. As to the Lanham Act claim in particular, we have cautioned against interpreting the scope of the statute in this way." *Id*. at 514, fn. 4. Accordingly, while Palermo's presentations satisfy the *Jordan* factors for determining commercial speech, they also constitute "commercial promotion" under Section 43(a)(1)(B) of the Lanham Act, which was interpreted by the Seventh Circuit in *Neuros Co. v. Kturbo, Inc*., 698 F.3d 514, 522 (7th Cir. 2012).

to the baseless fraud claims" in that case. (Opp., p. 2). But the misrepresentations in both cases share a technical subject matter (characteristics of high speed turbo blowers versus plastic pipe), medium for presenting the false information (PowerPoints and website postings), forum (trade shows) and target audiences (contractors and engineers). While the false statements in *Neuros* may have been more explicit, that did not bear on whether the presentations constituted "commercial promotion," which merely requires a medium or means through which the defendant disseminated information to a particular class of consumers. 698 F.3d at 522. Also, the speaker in that case and here were both agents of a business competing in a limited market with the targets of their disparaging speech. Under *Neuros,* Palermo's presentations and website postings clearly constituted "commercial promotion" under Section 43(a)(1)(B) of the Lanham Act.

## II. Palermo's Presentations Are Not Protected as Speech Affecting a Matter of Public Importance or Scientific Dialogue.

Palermo next argues his statements were not commercial because they involved an issue of public importance and were made as part of a scientific dialogue. (Opp., p. 3). Yet, commercial speech and speech involving public matters are not mutually exclusive. *See Jordan*, 743 F.3d at 516-517 (communications may be commercial speech notwithstanding their discussions of important public issues). Further, whatever the boundaries of a public interest privilege, it is forfeited because Palermo's statements were made with actual malice. *Neuros,* 698 F.3d at 519.[2]

Nor does Palermo's speech become a "scientific opinion" merely because the topic involves a technical subject matter. *See e.g., Daniels Sharpsmart, Inc. v. Becton, Dickinson & Co*, 2016 U.S. Dist. LEXIS 34964, *7-8 (N.D. Ill. Mar. 18, 2016) (use of scientific study in conjunction with communications to a competitor's clients and in promotional materials is commercial speech). While Palermo claims courts "routinely" afford scientific speech a privilege from false advertising laws, he

---

[2] In the interest of judicial economy, as to the issue of whether Palermo acted with actual malice, UGSI incorporates Section II (c) of its Response to Palermo's Motion for Summary Judgment (Dkt # 103, pp. 16-18).

cites only a single, distinguishable case to support his position. (Opp., p. 3 citing *Pellegrini v. Ne. Univ.*, 2013 U.S. Dist. LEXIS 150447 (D. Mass. Aug. 23, 2013)). *Pellegrini* arose out of publication of a journal article written by a faculty member on a publicly accessible digital archive the university used to raise money. The plaintiff alleged the article contained disparaging information about technology he patented. *Id*. at \*4-7. However, the plaintiff failed to allege the article, which he conceded was protected by the First Amendment, touted a particular product or was aimed at dissuading consumers from buying his goods or services. *Id*. at \*17-18.

Here, UGSI has demonstrated the purpose of Palermo's presentations was to tout a particular good (HDPE pipe) and to dissuade consumers from selecting a competing good, Fusible PVC® pipe. The corporate sponsorship of Palermo's material, which was presented at trade shows rather than in a peer-reviewed journal, also distinguishes this case from one "involving the rights of a university and one of its faculty to publish research" and protecting the "classroom [as] the marketplace of ideas." *Id*. at \*1. *Pellegrini* is patently distinguishable. Ultimately, Palermo fails to support his proposition that speech concerning a technical or scientific subject matter is immune from product disparagement under the Lanham Act even when it is clearly promotional. As in *Neuros*, where the defendant discussed a technical subject matter in PowerPoint presentations at industry trade conferences, Palermo's presentations fall within the Lanham Act despite their coverage of technical issues.

### III. Palermo Does Not Raise a Genuine Issue of Material Fact Regarding Whether the Content of His Presentations Was False and Misleading.

Palermo argues genuine issues cloud UGSI's evidence on the false and misleading statements he made about Fusible PVC® pipe. He mischaracterizes UGSI's evidence as relying exclusively on the reports of its expert witnesses, Dale Edwards and Steve Ferry, which Palermo argues are hearsay. He once again attempts to frame his false statements as "scientific opinion[s]." (Opp., p. 4). None of these arguments raise genuine issues over whether his statements were literally false and misleading.

4

### a. UGSI's Expert Reports Are Sufficiently Trustworthy and Reliable to Consider on Summary Judgment.

UGSI's citations to Dale Edwards and Steve Ferry's expert reports are appropriate because they are sufficiently reliable, independently verified by other evidence, and confirmed by sworn declarations of Dale Edwards and Steve Ferry. Federal courts have long recognized that the prohibition on hearsay is not intended to be a mechanical bar on otherwise reliable evidence. *Parker v. Four Seasons Hotel, Ltd.*, 2014 U.S. Dist. LEXIS 43870, at *9 (N.D. Ill. Mar. 31, 2014).

Palermo's claim that UGSI is relying exclusively on these expert reports is exaggerated.[3] Both expert reports are corroborated by other evidence that was submitted by UGSI in support of its motion for partial summary judgment. Palermo's own deposition testimony was cited for the proposition that he failed to present accurate information about crack lengths and misrepresented the results of the bent strap test. (Dkt # 87-1, pp. 27-30 and 50, attached as Exhibit B to Stmt. of Facts; Dkt # 87-6, pp. 9-13, attached as Exhibit L to Stmt. of Facts). Likewise, UGSI cited Palermo's responses to requests for admission and his deposition testimony to demonstrate the undisputed fact that Palermo left out critical information about how rapid crack propagation incidents were caused. (Dkt # 87-2, pp. 35-41, attached as Exhibit E to Stmt. of Facts; Dkt # 87-1, pp. 9, 19-21, 38-48). UGSI has provided corroborating support demonstrating falsity in Palermo's presentations for virtually all of the citations.[4]

Further, Dale Edwards' report states it was based on personal knowledge of the underlying incidents discussed in Palermo's presentations and publications as well as a review of the applicable standards and literature in this case. (Dkt # 87-5, pp. 27-28, Exhibit I to Stmt. of Facts). The report

---

[3] Palermo concedes UGSI's evidence of his false portrayal of the Greenshields & Leevers study is based on admissible evidence other than the expert reports. (Opp., p. 4).

[4] It is worth noting, but not surprising, that Palermo has not identified any prejudice that he believes he suffered as a result of UGSI's reliance on its experts' reports. Palermo's counsel deposed both Edwards and Ferry and had ample opportunity to question both on their reports and opinions.

contains an imprint verifying he is a registered professional engineer in the State of Illinois, which imposes ethical and professional obligations on Mr. Edwards and connotes a verification of the contents of his report. *See e.g., StormWater Structures, Inc. v. Platipus Anchors*, *Inc.*, 2010 U.S. Dist. LEXIS 11900, *24 (S.D. Tex. Feb. 11, 2010) (professional license stamp represents "willingness to stand behind one's work in the state that granted the license").

In addition, Rule 56 of the Federal Rules of Civil Procedure was amended in 2010 to eliminate the "unequivocal requirement that documents submitted in support of a summary judgment motion be authenticated." *Hope v. Hewlett-Packard Co.*, 2016 U.S. Dist. LEXIS 26878, *4-5 (E.D. Mich. Mar. 3, 2016). As amended, a party opposing summary judgment can object that the materials cited by the movant "cannot be presented in a form that would be admissible in evidence." *Id*. The objection contemplated, however, "is not that the material **has not** been submitted in admissible form, but that it **cannot be**." *Id*. (emphasis added). The revised Rule 56 allows the court to give the proponent "an opportunity "to either authenticate the document or propose a method for doing so at trial" *Id*.

Following this framework, UGSI directs the Court's attention to the sworn declarations of Dale Edwards and Steve Ferry, which affirm the content of each of their expert reports. (*See* Declaration of Dale Edwards, attached as <u>Exhibit A</u>, and Declaration of Steve Ferry, attached as <u>Exhibit B</u>; *see also In re Iron Workers Local 25 Pension Fund*, 2011 U.S. Dist. LEXIX 34505, *32-33 (E.D. Mich. May 21, 2011) (allowing "affidavits affirming the contents of each expert's report [to] cure technical deficiencies associated with the submission of the original unsworn reports")). Given their corrobation and affirmation, UGSI's expert reports bears sufficient guarantees of trustworthiness so as to consider them on summary judgment.

> **b. Palermo Does Not Raise a Genuine Issue Over the Literal Falsity of His References to Greenshields & Leevers' Critical Pressure Testing.**

UGSI has established there is no genuine issue concerning the literal falsity of Palermo's Slide Show. (UGSI's Memo, pp. 7-8). Palermo cited to a Greenshields & Leevers' study for the proposition

that the critical pressure of Fusible PVC® pipe at 10% air is 1.6 bar, when in reality, the study found it was 2.3 bar. The author of the study, Dr. Patrick Leevers, even testified that Palermo's presentation of this information was inaccurate. (Dkt # 87-5, pp. 22-24, attached as Exhibit L to Stmt. of Facts). Palermo's false representation of Greenshields & Leevers' findings is material because it falsely misleads the reader to believe Fusible PVC® pipe's critical pressure was below its operating pressure. This has been a focal point of Palermo's campaign and in light of his distortion of the relevant data, it is false. *See BASF Corp. v. Old World Trading Co.*, 41 F.3d 1081, 1091 (7th Cir. 1994) (statements in the form of tests show *x* are literally false when the tests cited do not establish *x*).

Palermo claims his representation of the critical pressure of Fusible PVC® pipe was based on a regression line in Dr. Leevers' study, an assumption that pressure values would be equivalent at 10% and 100% air, and an analysis of tests conducted at Jana Laboratories. (Opp., p. 6). This attempt to scientifically justify a falsehood *a posteriori* does not withstand scrutiny. In a 2010 paper by Palermo titled How to Design Against Long Running Cracks in Plastic Pipe for Water Applications, he acknowledges the critical pressure of the PVC pipe tested by Greenshields & Leevers was 2.3 bar. (Stmt. of Facts, ¶ 16; *see also* Dkt # 107-19, p. 12, Exhibit S to UGSI's Statement of Additional Facts in Opposition to Palermo's Motion for Summary Judgment). His own Slide Show contains a graph showing the critical pressure of PVC pipe at 10% is greater than 2 bar. (Stmt. of Facts, ¶ 26). His supposed reliance on Jana laboratories, which tested pipe at 100% air, is directly contradicted by his own testimony where he admitted the sole basis for the conclusion that the S4 critical pressure at 10% air was the Greenshields & Leevers research, which found the critical pressure at 10% air to be 2.3 bar. (Dkt # 87-6, pp. 31:13-32:10, attached as Exhibit L to Stmt. of Facts).

Palermo also contends his literally false reference to Greenshields & Leevers was a "scientific opinion" and privileged as such. (Opp., p. 6). But, nothing in his presentation referred to this figure in terms of approximation or hypothesis, or even discusses how he utilized a regression line and the

results of the Jana Laboratories testing to determine the critical pressure of Fusible PVC® pipe. *See Lott v. Levitt*, 469 F.Supp.2d 575, 585 (N.D. Ill. 2007) (to constitute an opinion it must be "plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts"). Accordingly, Palermo has raised no genuine issue over whether this statement was literally false.

### c. Palermo Does Not Raise a Genuine Issue Over the False and Misleading Nature of His Statements on Incidents of Rapid Crack Propagation.

Palermo also fails to raise a genuine issue over the literal falsity of the crack lengths he published in his Slide Show and presented to consumers at trade shows. Palermo's defense to this charge – that some of his representations were truthful and in one instance, he even underestimated the crack length in an alleged incident of rapid crack propagation – does not raise a genuine issue over whether he communicated unambiguously false information about the crack lengths in several incidents involving Fusible PVC® pipe. *Market Track, LLC v. Efficient Collaborative Retail Mktg., LLC*, 2015 U.S. Dist. LEXIS 75916, *21 (N.D. Ill. June 11, 2015) (a statement is literally false if it cannot be reasonably understood to mean anything different).

Palermo also raises no genuine issue regarding his concealment of the underlying causes of the rapid crack propagation events listed in his Slide Show. For the purposes of this litigation, he has revised the focus of his Slide Show, which was titled "What You Need to Know about RCP and Butt Fusion Integrity" to "what makes FPVC lines susceptible to RCP once the crack occurs." (Opp., p. 7). In a glaring moment of candor, he concedes his belief that Fusible PVC® pipe is "unsafe at any speed." (*Id*. at p. 8). But that is not true. Palermo cannot dispute the events listed in Palermo's Slide Show were not inherently caused by the pipe. Palermo claims consumers have a right to know of catastrophic outcomes related to rapid crack propagation. (*Id*.). UGSI agrees. That is why it was critical to inform consumers *how* those incidents occurred, and not just that they *did* occur. However, because it did not fit his "unsafe at any speed" narrative, this information was concealed from

8

Palermo's audiences. For this reason, the Palermo Slide Show conveyed a false impression about the quality and characteristics of Fusible PVC® pipe. *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 13 (7th Cir. 1992).

> **d. Palermo Does Not Raise a Genuine Issue of Material Fact Over His Use of Inapplicable Tests and Standards.**

In Palermo's response to UGSI's evidence that he misapplied testing standards to Fusible PVC® pipe, he suggests this Court cannot decide disputes over these flagrant inaccuracies because they were part of his "scientific methodology." (Opp., p. 8). Leaving aside that such a rule would allow advertisements and promotions to incorporate junk science, the case cited by Palermo for this supposed privilege does not establish that scientific speech is immune from the Lanham Act. In *Underwager v. Salter*, the issue was whether the defendants had acted with actual malice – not whether the challenged language was a legally protected opinion. 22 F.3d 730, 734 (7th Cir. 1994). The subject matter was the reliability of victim's memories, not the relative characteristics of a commercial product, and the defendants were not paid by a business competitor of the plaintiff. *Id*. at 732-36. *Underwager* provides no safe harbor for Palermo's false and disparaging commercial campaign against Fusible PVC® pipe.

Palermo's arguments opposing UGSI's evidence that he applied scientifically and practically inappropriate standards to Fusible PVC® pipe also do not raise genuine issues of material fact. *Nat'l Inspection & Repairs, Inc. v. George S. May Int'l Co.*, 600 F.3d 878, 882 (7th Cir. 2010) (non-movant must present "more than a mere scintilla of evidence or some metaphysical doubt as to the material facts" to defeat summary judgment). He claims his reliance on testing conducted on a twenty year-old PVC pipe is immaterial because "product improvements in the interim do not change the fundamental qualities of FPVC." (Opp., p. 8). Fusible PVC® pipe, however, has a significantly higher average molecular weight (146,000) than the 1995 pipe tested by Greenshields & Leevers (92,000). Palermo's own expert, Dr. Leevers, concedes molecular weight is the greatest indicator of fracture

9

resistance. (Dkt # 87-5, p. 24, attached as Exhibit H to Stmt. of Facts). [5] Molecular weight is thus the hallmark of a fundamental quality.

Palermo also disputes that 10% air is an unrealistic and unfair operating condition upon which to determine a pipe's resistance to fracturing. He states "water-filled pipelines generally have a small amount of air entrapped within the line." (Opp., pp. 8-9). While Palermo, who has never designed or installed a pipe, has no credentials to determine an appropriate amount of air in the field, UGSI's evidence demonstrates 10% is not a "small amount of air," but an amount that would pose a dangerous risk of fracturing in any pipe. (Dkt # 87-5, pp. 39-40, attached as Exhibit I to Stmt. of Facts).

Palermo also trumpeted unfavorable results from the "bent strap test," which does not apply to PVC, and he misrepresented that all 4 samples tested failed at the joint, when the Jana Labs report he relied upon stated that none of the Fusible PVC® pipes tested failed at the joint. (Dkt # 87-6, pp. 9-13, attached as Exhibit L to Stmt. of Facts). Palermo offers no response to these arguments, except to state he does not believe UGSI's testing has established an "adequate assurance of the long-term performance of butt-fusion joints." (Opp., p. 10). While this may be his current, litigation position, it is belied by his own admission to UGSI that it's testing established the reliability of Fusible PVC® pipe joints. (Dkt # 87-6, p. 52, attached as Exhibit S to Stmt. of Facts) ("I believe that UGSI has conducted significant testing to develop the proper butt fusion procedure for PVC Pipe and your field failure rate is very low"). This Court should reject Palermo's attempt to defeat summary judgment with arguments that are inconsistent with his own admissions and the opinions of his expert witnesses.

### IV. UGSI Has Established Consumer Reliance on Palermo's False and Misleading Statements.

Deception may be presumed from Palermo's literally false statements. *B Sanfield, Inc. v.*

---

[5] Palermo himself has known about the more than 50% difference from the 1995 UK pipe and C-900 Fusible PVC® pipe since he received Robert Walker's Analysis and Rebuttal of Allegations of Deficiencies in Fused PVC Joints and Susceptibility to Rapid Crack Propagation, in November 2012 as a member of the AWWA C-605 committee.

*Finlay Fine Jewelry Corp.*, 168 F.3d 967, 971 (7th Cir. 1999). Palermo argues a Lanham Act plaintiff "ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff." (Opp., p. 10 citing *Lexmark Int'l v. Static Control Components, Inc*. 134 S. Ct. 1377, 1391 (2014)). UGSI satisfies this standard. Palermo's statements have caused consumers to withhold trade from UGSI entirely or withhold trade until UGSI rebutted Palermo's falsehoods and rehabilitated the reputation of Fusible PVC® pipe.

For example, Julie Morrison, an engineer in Illinois, was considering Fusible PVC® pipe for a municipal project. In researching Fusible PVC® pipe, she found a disparaging article by Palermo containing the same false and misleading information he presented at trade conferences. She informed UGSI that Fusible PVC® pipe would not be allowed for the project due to the concerns "with the PVC fused joints" outlined in Palermo's article. (Dkt # 87-6, p. 33, attached as Exhibit O to Stmt. of Facts). This evidence also satisfies *Lexmark's* requirement of an injury flowing directly from the deception – Julie Morrison did not recommend Fusible PVC® pipe to her client for a municipal project *because of* Palermo's article.

In response, Palermo argues Ms. Morrison had several concerns with PVC and that she had no "decision making authority." (Opp., p. 12). UGSI met with Ms. Morrison several months after receiving her e-mail to present accurate information to correct Palermo's inaccurate statements. She testified that after hearing UGSI's countering information, she had no reason not to recommend PVC. (Dkt # 87-6, pp. 16-31, attached as Exhibit O to Stmt. of Facts). This confirms her decision to not recommend Fusible PVC® pipe stemmed from Palermo's article. And while Ms. Morrison may not make the final decision regarding what pipe to use for a project (that decision is reserved for her clients), that does not mean she is not a consumer who is capable of being (and was) misled by Palermo. *Neuros*, 698 F.3d at 519 (consumers included engineers *advising* wastewater plants).

In a similar instance of consumer deception, Steve Verseman, a project manager at the engineering firm Baxter & Woodman, sent an e-mail to UGSI including a link to one of Palermo's disparaging Slide Show presentations. Referencing the presentation, Mr. Verseman stated "it will most likely take more than a simple reassurance from Underground Solutions that FPVC is an acceptable pipe material and jointing [sic] method." (Dkt # 87-6, p. 44, attached as Exhibit Q to Stmt. of Facts). UGSI presented a slideshow rebutting Palermo's presentation to salvage its business relationship with Baxter & Woodman. (Dkt # 87-6, pp. 41-42, attached as Exhibit P to Stmt. of Facts). Palermo suggests Mr. Verseman was not materially affected by Palermo's PowerPoint and had discounted it prior to receiving UGSI's rebuttal presentation. (Opp., p. 11). But Mr. Verseman testified the Slide Show created fears and concerns about Fusible PVC® pipe that he previously did not have. (Dkt # 87-6, Exhibit P to Stmt. of Facts, pp. 39-42). His e-mail also clearly states that without UGSI presenting counteracting information, Baxter & Woodman would not consider Fusible PVC® pipe an "acceptable pipe material." (Dkt # 87-6, p. 44).

Lastly, Palermo admitted that a consumer at the Michigan AWWA conference selected HDPE pipe over Fusible PVC® pipe after hearing his presentation:

> The presentation at the MI AWWA went very well. After the presentation, this gentleman came up to me and said he was debating whether to use fusible PVC or HDPE. After hearing my presentation, he decided he would use HDPE.

(Dkt # 87-6, p. 15, Exhibit M to Stmt. of Facts).

Palermo's response to this admission is to argue, somewhat speciously, that UGSI cannot establish what the consumer "found persuasive." (Opp., p. 13). The entirety of Palermo's presentation at Michigan AWWA, at least with respect to Fusible PVC® pipe, was inaccurate and misleading. Palermo also contends his admission does not show the purchaser was influenced by the material in the Slide Show. (Opp., p. 13). This argument blatantly ignores the e-mail, in which Palermo writes that "***after hearing my presentation [the consumer] decided he would use HDPE***." (Dkt # 87-6, p.

15, Exhibit M to Stmt. of Facts). It is no surprise Palermo relayed to Performance Pipe that the conference went "very well" given his presentation influenced a consumer to select HDPE over Fusible PVC® pipe. This is exactly why Performance Pipe was paying him to speak at water and wastewater conferences throughout the county.

Palermo contends UGSI cannot show a loss of goodwill in the limited market for plastic pipe. (Opp., p. 13). Once again, this argument ignores the evidence. UGSI employees have been forced to spend time and money rebutting Palermo's false conclusions to potential consumers throughout the country. (Dkt # 87-1, p. 4, ¶ 12, attached as Exhibit A to Stmt. of Facts). While UGSI was successful in saving its reputation with Steve Verseman and Julie Morrison, that does not mean Fusible PVC® pipe has escaped Palermo's false campaign unscathed. Indeed, by the time it presented countering information to Ms. Morrison, it was too late to save its consideration for the Boulder Hill project. (Dkt # 87-6, pp. 16-31, attached as Exhibit O to Stmt. of Facts). The mere fact that UGSI has been contacted by consumers who have questioned the reliability of Fusible PVC® pipe due to Palermo's statements is evidence those statements have "dented [Fusible PVC pipe's] reputation." *Abbott,* 971 F.2d at 16 ("no doubt" false comparisons between two products "necessarily diminishes [the competing product's] value in the minds of the consumer"). UGSI has established no genuine issue exists regarding whether consumers were materially influenced and deceived by Palermo's misleading statements.

**V. UGSI is Entitled to a Permanent Injunction Enjoining Palermo from Making Future False and Misleading Statements About Fusible PVC® Pipe.**

Palermo also claims UGSI cannot obtain injunctive relief without "market research" of the harm resulting from Palermo's presentations. (Opp. Brief, p. 13). As addressed above, Palermo's statements about Fusible PVC® pipe were literally false, from which confusion may be presumed. *B Sanfield, Inc.*, 168 F.3d at 971. UGSI also presented sufficient evidence of confusion arising from Palermo's misleading statements. Such evidence is not conjecture; as detailed above, it comes directly

from the misled sources and from Palermo's own admissions. Palermo also disputes UGSI is entitled to a presumption of irreparable harm arising out of a Lanham Act violation. (Opp., p. 14).[6] The difficulty of proving irreparable harm in false advertising cases, however, is well-documented:

> It is virtually impossible to prove that so much of one's sales will be lost or that one's goodwill will be damaged as a direct result of a competitor's advertisement. Too many market variables enter into the advertising-sales equation. Because of these impediments, a Lanham Act plaintiff … need not even point to an actual loss or diversion of sales.
>
> The Lanham Act plaintiff must, however, offer something more than a mere subjective belief that he is likely to be injured as a result of the false advertising, he must submit proof which provides a reasonable basis for that belief. The likelihood of injury and causation … must be demonstrated in some manner.

*PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 126-27 (4th Cir. 2011) (affirming entry of permanent injunction to prevent future false advertising).[7]

As addressed in Section IV above, UGSI has presented more than a "subjective belief" of likely injury. While UGSI has been fortunate that some customers have given it an opportunity to rebut Palermo's disparaging statements about Fusible PVC® pipe, in the absence of injunctive relief, nothing will prevent Palermo from "infecting the marketplace with the same or similar claims" in future presentations. *PBM Prods*, 639 F.3d 111 at 127. Accordingly, even if not presumed, UGSI has suffered and will continue to suffer irreparable harm and UGSI is entitled to injunctive relief.

---

[6] The Seventh Circuit has not addressed whether the Supreme Court's holding in *eBay v. MercExchange, L.L.C.* extends to false advertising claims under Lanham Act. 547 U.S. 388 (2006). One recent Northern District of Illinois court recognized "cases in this district have continued to apply a presumption of irreparable injury from Lanham Act violations on at least nine occasions since the Supreme Court published its *eBay* decision," but nonetheless considered whether the plaintiff was likely to suffer irreparable harm. *Market Track*, 2015 U.S. Dist. LEXIS 75916 at *87-88 (citing cases). This Honorable Court recently reviewed evidence of irreparable harm in a trademark infringement case under the Lanham Act. *Nat'l Fin. Partners Corp. v. Paycom Software, Inc.*, 2015 U.S. Dist. LEXIS 74700, *37 (N.D. Ill. June 10, 2015) (J. Kennelly).

[7] The difficulty of proving irreparable harm for false advertising violations has also been recognized in the Seventh Circuit. *See Abbott*, 971 F.2d at 18 (That it is "very difficult to distinguish the effect of the [campaign] from the effect of other [factors affecting consumers purchasing decisions], and to project that effect into the distant future … render monetary relief inadequate").

## VI. UGSI is Entitled to Its Attorney's Fees.

The final issue raised by Palermo's opposition brief is UGSI's right to recover its attorney's fees. Palermo's recitation of the law on this issue is half-complete. Attorney's fees are appropriate when a losing party maintained an objectively unreasonable defense *or* when the violation is "especially egregious – that is, if it found to be 'malicious, fraudulent, deliberate, or willful.'" *Engineered Abrasives, Inc. v. Am. Mach. Prods. & Serv.*, 2015 U.S. Dist. LEXIS 33691, *31 (N.D. Ill. Mar. 18, 2015); *see also Neuros*, 698 F.3d at 521 ("the determination of unreasonableness *or* egregiousness is to be made in the first instance by the district court") (emphasis added).

Palermo gave presentations and published materials he knew were inaccurate. Palermo published an article in 2010 stating Greenshields & Leevers' testing revealed the critical pressure of PVC pipe at 10% air was 2.3 bar. Yet, between 2010 and 2013, Palermo represented to audiences that the critical pressure of Fusible PVC® pipe was 1.6 bar, which was below the pipe's rated pressure. UGSI sent Palermo a cease and desist letter detailing many of the disparaging statements that are the subject of this lawsuit. (Dkt # 87-6, pp. 46-53). Palermo failed to modify his presentations. Palermo continued to communicate disparaging information even after he admitted he no longer believed Fusible PVC® pipe's butt-fused joints were unreliable or demonstrated a poor failure rate. (Dkt # 87-6, p. 52, attached as Exhibit S to Stmt. of Facts). Palermo's disparaging campaign was, by definition, willful and deliberate, and conducted in "disregard for the consequences that would result from behavior [he] knew was wrong." (Opp., p. 15). Accordingly, UGSI is entitled to an award of attorney's fees.

## CONCLUSION

For the reasons set forth therein, UGSI respectfully requests this Court grant its Motion for Partial Summary Judgment on liability under Count IV of its Amended Complaint.

Date: May 9, 2016

Respectfully submitted,

**Underground Solutions, Inc.**

/s/ Christopher T. Sheean
Christopher T. Sheean (A.R.D.C. #6210018)
Steven L. Vanderporten (A.R.D.C. #6314184)
Swanson, Martin & Bell, LLP
330 North Wabash, Suite 3300
Chicago, IL 60611
(312) 321-9100
Fax: (312) 321-0990